# EXHIBIT 1

# Complaint

Electronically Filed
Erica L. Woodford, Clerk
Bibb County Superior Court
Docket Date: 10/9/2018 1:39 PM

Raven Alston

IN THE SUPERIOR COURT OF BIBB COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| VC MACON, GA, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | FILE NO. _____ 2018-CV-069412 |
| VIRGINIA COLLEGE, LLC and | ) | |
| EDUCATION CORPORATION OF | ) | |
| AMERICA, jointly and severally, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW VC Macon, GA, LLC ("plaintiff"), Plaintiff in the above captioned matter, and files this Complaint and shows the Court as follows:

### 1.

Defendant Virginia College, LLC ("Defendant VC") is an Alabama limited liability company that is registered with the Georgia Secretary of State to conduct business in Georgia. Defendant VC is subject to the jurisdiction and venue of this court. Defendant VC may be served with process through its registered agent, National Registered Agents, Inc., at 289 S. Culver Street, Lawrenceville, Georgia 30046.

### 2.

Defendant Education Corporation of America ("Defendant ECA") is a Delaware corporation and is subject to the jurisdiction and venue of this court. Defendant ECA may be served with process through its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Defendant VC and Defendant ECA are hereinafter collectively the "Defendants."

RA

## BACKGROUND FACTS

### 3.

On March 19, 2010, Plaintiff and Defendant VC entered into a lease agreement (the "Operating Lease"), a true and correct copy of which is attached hereto as Exhibit "A" and made a part hereof. The Operating Lease has not been amended.

### 4.

On March 22, 2010, Plaintiff and Defendant VC entered into a lease agreement (the "Capex Lease"), a true and correct copy of which is attached hereto as Exhibit "B" and made a part hereof. The Capex Lease has not been amended.

### 5.

Defendant ECA guaranteed both the Operating Lease and the Capex Lease (collectively the "Leases") by written lease guaranty (collectively, the "Guaranty"). True and correct copies of each Guaranty are attached as Exhibit D to the Operating Lease and Exhibit E to the Capex Lease.

### 6.

By the terms of the Leases and the Guaranty, the parties agreed that venue for any action commenced that relates to either the Leases or the Guaranty would lie in Bibb County, Georgia.

### 7.

Defendant VC operates a for-profit college known as Virginia College. Tuition is paid to Defendant VC by among things loans provided to students through the Office of Federal Student Aid offered through the US federal government's Title IV program under the Higher Education Act of 1965 (the "Tuition Loans").

### 8.

Defendant VC operates its Virginia College location in Macon, Georgia upon the property

{00164861 1 }

-2-

covered by the Leases ("Macon VC").

9.

Macon VC is a Title IV educational facility, meaning it is eligible for student aid.

10.

Macon VC has received student aid from the federal government for the current educational period.

11.

The Tuition Loans were paid directly to Defendant VC in advance for the entire educational period.

12.

Upon information and belief, Defendant VC has received all of its tuition from its students, including tuition paid for by the Tuition Loans, for the current educational period.

13.

This tuition is designed to cover Defendant VC's operating expenses and overhead including among other operating expenses the rent and other amounts due under the Leases.

14.

In other words, Defendant VC has already received the funds necessary to pay Defendant VC's obligations under the Leases for the current educational period and perhaps a greater period of time.

15.

However, instead of paying the rent and other amounts due under the Leases, Defendant VC has breached said Leases by, among other things, failing and refusing to pay monthly rental for September and October 2018 and informing Plaintiff of the intent to vacate the premises and

terminate all payments before the expiration of the term of the Leases.

### 16.

By virtue of Defendant VC's failure to adhere to the Leases, Defendants are indebted to Plaintiff in the total amount of $179,204.41 for the months of September and October 2018, together with the monthly rental rate of $82,600.79 thereafter until December 31, 2018 upon which beginning on January 1, 2019, monthly rental increases to $83,357.91, plus late fees equal to 5% of the delinquent rent payment, plus and accrued and future interest at the rate of 1.5% per month until paid, plus reasonable attorney's fees, all as set forth in the Leases and Guaranty. As of October 11, 2018 an additional late fee equal to $4,130.04 shall be due.

### 17.

Defendants have failed and refused to cure the said breach of Leases despite demand, a true and correct copy of which is attached hereto as Exhibit "C" and made a part hereof.

### COUNT ONE

### Breach of Contract

### 18.

Plaintiff realleges, reasserts and incorporates by reference thereto all of the averments set forth in paragraphs 1 through 17 as if fully restated below.

### 19.

Defendants breached the Leases by failing to adhere to the terms thereof.

### 20.

Defendants breached the Leases by failing to pay the amounts due thereunder.

### 21.

Defendants further breached the Leases by notifying Plaintiff of Defendants' intent not to

pay the amounts due under the Leases and of Defendants' intent to vacate the premises and terminate payments due under the Leases prior to the expirations of the term of the Leases, which constitutes an anticipatory breach. A true and correct copy of Zvi Rhine's September 6, 2018 email is attached hereto as Exhibit "D" and made a part hereof.

### 22.

Plaintiff has not consented to any amendment of the Leases.

### 23.

Plaintiff has not consented to an early termination of the Leases.

### 24.

Plaintiff has not consented to any of the terms set forth in the email attached hereto as Exhibit D.

### 25.

Plaintiff has been damaged by Defendants' breach of the Leases.

### 26.

Defendants are liable to Plaintiff for damages arising from the breach of said Leases.

### 27.

Defendants are liable to Plaintiff for interest as set forth under the Leases.

### 28.

Defendants are liable to Plaintiff for attorney's fees as set forth under the Leases.

### 29.

Plaintiff now and again makes a new demand for payment of this obligation sued upon, with interest; and upon failure to pay same as provided by law within ten days from receipt of this complaint, Plaintiff will claim the attorney's fees provided for said obligation.

## COUNT TWO

### Conversion

**30.**

Plaintiff realleges, reasserts and incorporates by reference thereto all of the averments set forth in paragraphs 1 through 29 as if fully restated below.

**31.**

Defendant VC and/or Defendant ECA has received tuition, including without limitation proceeds from the Tuition Loans, for the current educational period.

**32.**

A portion of such tuition is intended for use by Defendants to pay the sums due under the Leases.

**33.**

Defendants have failed and refused to adhere to the terms of the Leases by failing to pay the amounts due thereunder.

**34.**

Defendants retaining such tuition instead of paying the amounts due under the Leases constitutes conversion.

**35.**

Plaintiff has been damaged by Defendants' conversion.

**36.**

Defendants are liable to Plaintiff for the damages arising from Defendants' conversion in an amount to be determined by the jury.

## COUNT THREE

### Unjust Enrichment

#### 37.

Plaintiff realleges, reasserts and incorporates by reference thereto all of the averments set forth in paragraphs 1 through 36 as if fully restated below.

#### 38.

Alternatively, Defendants retaining such tuition instead of paying the amounts due under the Leases constitutes unjust enrichment.

#### 39.

Plaintiff has been damaged by Defendants' unjust enrichment.

#### 40.

Defendants are liable to Plaintiff for the damages arising from Defendants' unjust enrichment in an amount to be determined by the jury.

## COUNT FOUR

### Fraud

#### 41.

Plaintiff realleges, reasserts and incorporates by reference thereto all of the averments set forth in paragraphs 1 through 40 as if fully restated below.

#### 42.

As an inducement to enter the Leases, Defendants represented to Plaintiff that tuition, including without limitation the Tuition Loans, would be used to pay the amounts due under the Leases.

**43.**

Defendants accepted and received tuition with full knowledge that it includes sums due to Plaintiff under the Leases.

**44.**

Instead of paying the sums due under the Leases, upon information and belief Defendants have diverted the tuition elsewhere.

**45.**

The representations made by Defendants to induce Plaintiff to enter the Leases were false.

**46.**

Such false representations were knowingly made to induce Plaintiff to enter the Leases and allow Defendant VC to occupy the premises.

**47.**

Upon information and belief Defendants also knowingly made false representations to induce the federal government to deliver the Tuition Loans to Defendant.

**48.**

At all times relevant hereto Defendants knew they were going to retain the tuition instead of paying the amounts due under the Leases.

**49.**

Upon information and belief, Defendants have used some of the tuition to pay expenses or other disbursements not related to Macon VC.

**50.**

Defendants have defrauded Plaintiff through such diversion of said tuition.

{00164861 1 }

51.

Defendants have defrauded the federal government by representing that tuition, including without limitation the Tuition Loans, would be used to pay for Defendant VC's operating expenses, including the amounts due under the Leases.

52.

Plaintiff is a third-party beneficiary under the Tuition Loans.

53.

Plaintiff has been damaged as the result of such fraud.

54.

Defendants are liable to Plaintiff for such fraud in an amount to be determined by a jury.

## COUNT FIVE

### Constructive Trust

55.

Plaintiff realleges, reasserts and incorporates by reference thereto all of the averments set forth in paragraphs 1 through 54 as if fully restated below.

56.

If Defendants are allowed to retain the tuition and not pay the amounts due under the Leases, Plaintiff will be irreparably harmed.

57.

The Court is authorized as a court of equity to issue an order *instanter* compelling Defendants to set aside and impose a constructive trust for the benefit of Plaintiff for such amounts from the tuition to pay the amounts due under the Leases.

## COUNT SIX

### Attorney's Fees, Costs, Expenses and Interest

#### 58.

Plaintiffs restate and reassert the statements, averments and allegations contained in paragraphs 1 through 57 of this Complaint as if fully restated hereinbelow.

#### 59.

Under Paragraph 29 of the Operating Lease and Paragraph 28 of the Capex Lease, Defendants are liable to Plaintiff for attorney's fees as provided under O.C.G.A. §§ 13-1-11.

#### 60.

The stance taken by Defendants epitomizes the kind of "so sue me attitude", stubborn litigiousness and or causing of unnecessary trouble and expense so as to give rise to liability to Plaintiff for any and all actual/reasonable attorney's fees, costs and expenses incurred in conjunction with the matters described herein pursuant to O.C.G.A. §§ 13-6-11 and 9-15-14.

#### 61.

Alternatively and or additionally, Defendants are liable to Plaintiff for any and all expenses and attorney's fees incurred and resulting from Defendants' actions/inactions described herein pursuant to O.C.G.A. §§ 51-12-7 and or 13-11-8.

#### 62.

Defendants are liable to Plaintiffs for the maximum interest allowable by law and pursuant to proper prior notice issued to Defendant in conjunction with O.C.G.A. §§ 13-11-7 and or 51-12-14. *See* also O.C.G.A. §§ 13-6-13, 7-4-2, 7-4-14, 7-4-15 and or 7-4-16.

## COUNT SEVEN

### Punitive Damages

63.

Plaintiffs restate and reassert the statements, averments and allegations contained in paragraphs 1 through 62 of this Complaint as if fully restated hereinbelow.

64.

The actions of Defendants show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences such that the Plaintiff is entitled to punitive damages to punish, penalize and deter Defendants from committing these acts in the future.

65.

Alternatively, the peace, happiness, or feelings of Plaintiff have been damaged to the extent prescribed by the enlightened consciences of impartial jurors.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(a)  For judgment in the amount of $179,204.41 plus late fees and interest under Count One;

(b)  For additional judgment in the amount of $82,600.79 per month until December 31, 2018 and beginning on January 1, 2019, in the amount of $83,357.91 plus late fees and interest under Count One;

(c)  For additional judgment in the amount of $4,130.04 under Count One;

(d)  For judgment arising from Defendants' conversion in an amount to be determined by a jury under Count Two;

(e)  For judgment arising from Defendants' unjust enrichment in an amount to be

{00164861 1 }

- 11 -

determined by a jury under Count Three;

(f)     For judgment arising from Defendants' fraud in an amount to be determined by a jury under Count Four;

(g)     For an order *instanter* imposing a constructive trust upon the tuition received by Defendants for such amounts from the tuition to pay the amounts due under the Leases under Count Five;

(h)     For judgment in favor of Plaintiff for interest, costs, expenses and attorney's fees under Count Six;

(i)     For judgment in favor of Plaintiff for punitive damages in an amount to be determined by a jury under Count Seven; and

(g)     For such other and further relief as this Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON THOSE ISSUES SO TRIABLE.**

Respectfully submitted,

**FLYNN & GOTTLIEB, P.A.**

/s/ Jon A. Gottlieb

Jon A. Gottlieb, Esq.
Georgia Bar No. 303060
Attorneys for Plaintiff VC Macon, GA, LLC

800 Johnson Ferry Road
Atlanta, Georgia 303042-1417
Tel (404) 497-8000
Fax (404) 497-8009
jong@lawfg.com

# EXHIBIT A

## LEASE AGREEMENT

THIS LEASE AGREEMENT (this "Agreement") is made and entered into on the latest date shown by the signatures of the parties hereto (the "Effective Date") by and between VC Macon, GA, LLC, a Mississippi limited liability company, or its successors and assigns ("Landlord") and Virginia College, LLC, an Alabama limited liability company ("Tenant").

1.    Leased Premises.

(a)    In consideration of the rents, terms, provisions and covenants of this Agreement, Landlord hereby leases, lets and demises to Tenant and Tenant hereby takes, the following described Leased Premises (the "Premises" or "Leased Premises") comprised of certain land, buildings and related improvements located at 1901 Paul Walsh Drive in Macon, Bibb County, Georgia, including all appurtenances, licenses, easements, entitlements and permits related thereto. The Leased Premises are more particularly described in Exhibit "A," attached hereto and incorporated herein by reference. The Leased Premises contains 48,410 usable square feet of improved space in a portion of a building of approximately 102,098 usable square feet (the "Building") located on approximately 18.25 acres of land. The remaining 53,688 usable square feet of improved space in said Building is also being leased concurrently herewith by Tenant from Landlord and is referred to herein as the "Surplus Premises".

(b)    This Agreement is contingent upon Landlord's ownership and control of the Leased Premises.

2.    Term.

(a)    The term of this Agreement (as such term may be extended pursuant to subsection 2(e) below, the "Term") shall be a period of fifteen (15) years commencing on the earlier to occur of the following events (hereinafter, the "Commencement Date"):

(i)    The date that Tenant shall open for business operations in the Premises; or

(ii)    The date that is forty-five (45) days after the later to occur of (a) the delivery of the Premises for Tenant's exclusive possession; (b) the Substantial Completion (as defined in Section 7(h) below) of the Project Improvements (as defined below), as certified by Tenant's project manager; and (c) the date of the delivery of a certificate of occupancy (the "Delivery Date").

(b)    The term "Lease Year" as used herein shall mean each successive full calendar year of this Agreement, beginning with the calendar year 2011. The partial year from the Commencement Date until January 1, 2011 and the partial year from the end of the final full Lease Year to the Expiration Date (defined below) hereof shall be considered partial Lease Years.

(c)    The Term shall end and this Agreement expire on the last day of the fifteenth

(15th) full Lease Year, subject to Tenant's renewal option(s) as provided in subsection 2(e) below (the "Expiration Date").

(d)    Within thirty (30) days of the Commencement Date, and without any further request Tenant and Landlord shall acknowledge the Delivery Date, the Commencement Date, and the Term by executing a document entitled the "Commencement Date Addendum" which form is attached as Exhibit "B". By executing the Commencement Date Addendum, Tenant is accepting possession of the Leased Premises and reconfirming the terms and conditions of this Agreement.

(e)    Provided Tenant is not in default at the time Tenant delivers a renewal notice to Landlord after giving effect to applicable grace, notice and cure periods, Tenant shall have two (2) options to renew for a term of five (5) years for each option, upon all the terms, covenants, and conditions set forth in this Agreement. To elect such options, Tenant must give Landlord written notice to renew no less than six (6) months prior to the expiration of the then-current Term. After the exercise of a renewal option, all references to the Term of this Agreement shall be deemed to mean the Term, as extended pursuant to this Section.

3.    Minimum Rent and Additional Rent.

(a)    Tenant agrees to pay to the Landlord net minimum rent for the Leased Premises (the "Minimum Rent") in equal monthly installments in advance not later than the fifth (5th) day of each month of the Term; in the first full Lease Year and any prior partial Lease Year, Tenant shall deliver the monthly Minimum Rent installment of $48,247.78 (calculated upon an initial annual Minimum Rent equal to Five Hundred Seventy-Eight Thousand Nine Hundred Seventy-Three and 40/100 Dollars ($578,973.40). Any partial months during the Term shall be prorated on a per diem basis.

(b)    Beginning with the second (2nd) full Lease Year and for each successive Lease Year until the end of the Term, the annual Minimum Rent shall increase by one percent (1%) per annum over the previous year's Minimum Rent.

(c)    Except for the Minimum Rent, any payment of funds or sums due Landlord that are required under this Agreement shall be defined as Additional Rent (the "Additional Rent").

(d)    All Minimum Rent and Additional Rent payable under this Agreement is payable during the Term, commencing on the Commencement Date, and shall be paid and delivered to the Landlord at the place designated by the Landlord for notices under this Agreement, or such other place as it may subsequently designate in writing.

4.    Late Charge.

Other remedies for nonpayment of rent notwithstanding, if the Minimum Rent or Additional

Rent payment is not received by Landlord on or before five (5) days after the due date of the month for which rent is late, a charge of five percent (5%) of Tenant's delinquent rent payment shall be assessed to Tenant ("Late Fee"). Such Late Fee shall be immediately due and payable in addition to the Minimum Rent or Additional Rent, if any, owed by Tenant under the terms of this Agreement. The provision for such late charge shall be in addition to all of Landlord's other rights and remedies hereunder or at law shall not be construed as liquidated damages or as limiting Landlord's remedies in any manner. Landlord's receipt of a partial payment of Minimum Rent or Additional Rent shall not operate as a waiver or release of any outstanding sum due hereunder.

5.    Usage.

(a)    The Leased Premises shall be used as a business that provides retraining and educational services and for such other lawful purposes as may be incidental thereto (including a cosmetology salon and therapeutic massage facility); or, with the written consent of Landlord and any third party lender whose loan is secured, in whole or in part, by the Leased Premises, any other lawful purpose permitted under the Covenants (defined below) and applicable zoning. To the best of Landlord's knowledge upon review of the Covenants, no consent of the adjacent shopping center owners or tenants is required as a condition to Tenant's proposed use of the Leased Premises. Tenant shall at its own cost and expense obtain the necessary licenses and permits necessary for any such use.

(b)    On or before the Effective Date, Landlord shall provide Tenant with: (i) its most recent title insurance commitment covering the Leased Premises, (ii) a copy of Landlord's most recent survey of the Leased Premises, and (iii) the instruments and other documents described in Exhibit "C" attached hereto (collectively, the "Covenants"). All construction, improvements, modifications, occupancy, use and operations of the Leased Premises and the surrounding parking and access areas are subject to the Covenants and applicable zoning and building ordinances.

6.    Signage.

(a)    Tenant shall have the right to the maximum building signage available under local law and specifically, to the maximum signage permitted by law and the Covenants or other restrictions that apply to the Leased Premises. Tenant shall at its expense also have the right to maximum signage on any and all pylon or monument signage now existing or that may become available or constructed by Tenant on the Leased Premises that is permitted by law and the Covenants at any time during the Term. To the extent allowed by law, Tenant shall have the right to operate its business and install signage under any of its authorized trade names including, but not limited to, Virginia College. Landlord makes no representation or warranty regarding the availability or permission to use any of Tenant's trade names within the State of Georgia.

(b)    During the final six (6) months of the Term hereof or any extension or renewal thereof, Landlord shall have the right to post a "For Rent" sign and to show the

Leased Premises at reasonable hours to prospective tenants.

7.    Project Plans, Improvements and Budget.

(a).    Tenant shall, at its cost, be responsible for the design of the improvements to the Premises needed to meet Tenant requirements and specifications ("Project Plans"). Tenant shall deliver the Project Plans by (already delivered) ("Project Plans Delivery Due Date") and the Project Plans shall be subject to Landlord's approval, which may not be unreasonably withheld. If the Tenant does not deliver the draft Project Plans by such date, then all Landlord's construction deadlines in this Agreement shall be adjusted by the number of days that Tenant misses such deadline.  If Landlord does not respond to any draft Project Plans within ten (10) days, the proposed Project Plans shall be deemed approved.

(b)    Prior to commencement of construction of the improvements in accordance with the Project Plans (the "Project Improvements") and upon Landlord's receipt of the final Project Plans, Landlord shall obtain firm bids for the Project Improvements as reflected on the Project Plans (the "Bidded Costs").  If the firm bids for the Bidded Costs are higher than Two Million Nine Hundred Four Thousand and 00/100 Dollars ($2,904,600.00) (the "Project Budget"), then Tenant shall, within fourteen (14) days, make adjustments to the Project Plans to bring the Bidded Costs within the Project Budget.  If the Tenant does not deliver the revised Project Plans within fourteen (14) days, then all Landlord's construction deadlines within this Agreement shall. be adjusted by the number of days that Tenant misses such deadline.  If the Bidded Costs are within the Project Budget, then the Project Improvements and Projected Budget are deemed as accepted by Tenant.

(c)    Tenant shall obtain the consent of the appropriate governmental agencies necessary to begin the Project Improvements.  Landlord will cooperate with Tenant, to the extent that such cooperation does not cause any material extra expense to Landlord, in obtaining the necessary consents to begin the Project Improvements and shall furnish all reasonable information with respect to the Leased Premises that is necessary for Tenant to efficiently and expeditiously. prepare the preliminary and final plans and specifications for the Project Improvements.

(d)    Following the consent of the appropriate governmental agencies necessary to begin the Project Improvements, Landlord covenants to immediately commence construction of the Project Improvements to the Leased Premises (the date of such commencement is herein . referred to as the "Construction Commencement Date") and shall diligently pursue the timely completion of such improvements.

(e)    Landlord agrees that it will commence construction of the Project Improvements on a date not later than April 5, 2010 ("Project Improvements Commencement Deadline") or as amended by the mutual agreement of Landlord and Tenant in writing.  Within five (5) days of Landlord's commencement of the Project Improvements, Landlord shall provide Tenant with written notice of the commencement of the Project Improvement ("Notice of Commencement"). Notwithstanding any provision of this Agreement to the contrary, if for any reason, Landlord cannot commence construction of the Project Improvements by the Project Improvements Commencement Deadline, either Tenant, provided that Tenant is not in default of any of the

terms and conditions hereof beyond applicable notice and cure periods, or Landlord may terminate this Agreement upon written notice to the other party hereunder within thirty (30) days after the Project Improvements Commencement Deadline.

(f)      Tenant shall have the right to change the Project Plans through change orders ("Change Orders").  Upon commencement of construction on the Project Improvements, the amount by which the actual cost of constructing the Project Improvements exceeds the Project Budget, to the extent that such excess is caused by or on behalf of Tenant, Change Orders, changes to the Project Improvements necessary to comply with applicable laws, codes and ordinances, if any, or otherwise by any changes to the Project Plans that are not the result of the acts, decisions or omissions of Landlord, shall be paid in full by the Tenant as Additional Rent within seven (7) days of the Commencement Date.

(g)      Tenant covenants not to cause a delay in the construction of the Project Improvements. Tenant covenants to immediately respond upon actual receipt of a written request or telephone call to all questions, inquiries, clarifications and requests for information about the Project Improvements so that the general contractor can Substantially Complete the Project Improvements on or before the date set forth in Section 7(j), below. Tenant further covenants to cause the project architect to timely fulfill its obligations under their agreement. Tenant acknowledges that this Section 7(g) is a material inducement to Landlord to enter into this Agreement.

(h)      In the event Landlord determines that the progress of the Project Improvements is being slowed or delayed because of the project architect, Tenant shall immediately upon request by Landlord cause the agreement with the project architect to be terminated.  In the event of such termination Tenant shall immediately pay to such project architect any license fee in order to permit Landlord to use the Project Plans to complete the Project Improvements.  Upon such termination Landlord may, but shall not be obligated to, hire a replacement architect, at Tenant's expense. Any costs associated with the transfer of the architect's duties from the terminated architect to the replacement architect shall be the sole responsibility of Tenant. Tenant further agrees that any agreement with the project architect shall include provisions (1) allowing Tenant to reassign its rights in the Project Plans to Landlord to complete, operate, and maintain the Project Improvements, without charge to Landlord, (2) allowing Landlord, its successors or transferees to keep and use such Project Plans for maintenance, repairs, additions, or demolition, and (3) permitting Landlord or any successor-in-title to disclose such Project Plans to a prospective buyer, transferee, lender, or tenant of Landlord.      All costs or expense reimbursements payable by Tenant to Landlord or a replacement architect in connection with a replacement architect who is hired pursuant to this subsection shall be paid in full by Tenant as Additional Rent within seven (7) days of the Commencement Date.

(i)      It is expressly understood by Landlord that Tenant shall not be liable for any increase in Construction Costs resulting from a Force Majeure and that all such costs shall be the responsibility of the Landlord.

(j)      Landlord's construction contract with its general contractor for the Project Improvements shall require the general contractor to Substantially Complete the Project Improvements on or before August 19, 2010, subject to commercially standard extension terms.

Landlord shall deliver the Premises after Substantially Completing the Project Improvements in accordance with the Project Plans. In connection with Project Improvements, "Substantial Completion" and/or "Substantially Complete" shall mean that the Project Improvements set forth in the Project Plans are completed (specifically, the electrical and mechanical systems have been completely installed and are fully functioning and operable; all utilities have been permanently hooked up, permanently and separately metered and service is established; the toilet facilities are completed; the fire and theft protection systems have been completely installed, are functioning, and are capable of being monitored) and a permanent certificate of occupancy has been issued by applicable governmental authorities (in such form and substance as typically provided by the applicable authority). Further, Substantial Completion anticipates that the work performed by Landlord shall be in conformity with the Final Plans and shall be subject only to Punch List Items (as defined below). "Punch List Items" means any minor items of the Project Improvements remaining that would in no way restrict Tenant from commencing any and all of its "pre-opening activities," including by way of example, but not limitation: moving in furniture; interviewing prospective employees and students; setting up offices; and opening in the Premises for business. Landlord shall complete any and all Punch List Items within twenty (20) days of written notice thereof from Tenant.

(k)     The parties acknowledge that the Project Budget is being used in the calculation of the Minimum Rent due hereunder. If any portion of the Project Budget is not used by Landlord for the construction of the Project Improvements in accordance with the Project Plans, for any reason whatsoever, then the unpaid portion of the Project Budget may be offset against the Minimum Rent payable hereunder; provided however, the amount of such monthly offset shall not exceed the amount that would amortize the unused portion of the Project Budget over the remainder of the initial 15 year term of this Agreement at the rate of eight percent (8%) per annum. Landlord shall cause the general contractor to issue any construction warranties jointly in the names of Landlord and Tenant, with the understanding that Landlord may but shall not be obligated to pursue enforcement of any such warranty, although Landlord agrees to cooperate with Tenant in the enforcement of such warranties, as necessary. Landlord shall automatically be released from its construction obligations under this Section 7 upon completion of the Project Improvements (including all Punch List Items) and the issuance of any construction warranties by the general contractor in the name of Tenant (or jointly in the names of Landlord and Tenant). Following such release, Landlord shall have no liability for any Premises defects.

(l)     After the Commencement Date, Tenant shall not make or allow to be made any structural alterations, additions, improvements and/or upgrades in or to the Leased Premises or alterations that impact the exterior of or systems serving the Leased Premises without first providing Landlord copies of the plans and specifications for those improvements and obtaining the written consent of Landlord to proceed with those improvements. Tenant may not alter or modify any Common Area (as defined in the Covenants) including, without limitation, all parking areas, absent Landlord's consent. Any alterations, additions, improvements and/or upgrades to the Leased Premises made by Landlord or Tenant (excluding satellite and/or wireless communications equipment installed by Tenant on, and removed without damage to, the roof and Tenant's trade fixtures, equipment or other personal property) shall at once become the property of Landlord and shall be surrendered to Landlord upon the termination of this Agreement.

(m)     Absent Landlord's express prior consent Tenant shall have no authority, express

or implied, to allow or permit any claim, lien or encumbrance of any kind or nature whatsoever upon, or in any manner to bind, the interest of Landlord in the Leased Premises or Tenant's leasehold interest arising hereunder or to charge or assign the rentals payable hereunder for any claim, debt or obligation in favor of any other party dealing with Tenant, including without limitation those who may furnish materials or perform labor for any construction or repairs. Tenant may not create any loan, indebtedness or obligation that is secured with its leasehold interest arising hereunder. Tenant covenants and agrees that it will immediately pay or cause to be paid all sums legally due and payable by it on account of any debt, obligation, promise, agreement, labor performed or materials furnished in connection with any work performed on the Leased Premises which may result in a claim or lien asserted against its leasehold interest in the Leased Premises or the improvements thereon and that it hereby indemnifies, holds harmless and agrees to defend Landlord from any and all claims, debts, obligations, losses, costs or expenses, including without limitation attorney's fees, based on or arising out of threatened or asserted claims or liens against the leasehold estate or against the right, title and interest of the Landlord in the Leased Premises or otherwise in contravention of this Agreement.

(n)     If Tenant causes any construction or improvements to the Premises after the Commencement Date, Tenant shall immediately pay all contractors, subcontractors, suppliers, laborers and materialmen, so as to prevent the possibility of a lien attaching to the Leased Premises, and should any such claim or lien be threatened, made or filed, Tenant shall immediately contest same or bond against or discharge the same within thirty (30) days of written notice of such lien. Tenant shall immediately notify Landlord of all such claims or liens. Tenant shall diligently pursue any such contest, and upon failure to prevail in such contest, shall fully discharge such lien at its sole cost and expense immediately upon Landlord's request. Notwithstanding the foregoing, Tenant herein shall not have any authority to create any mechanics' or materialmen's liens on the Landlord's interest in the Leased Premises.

(o)     Notwithstanding any provision of this Agreement to the contrary, Tenant shall have the right to install a satellite dish or other transmission or reception device on the roof of the Leased Premises if necessary for its business operations provided that Tenant shall seek prior approval from Landlord which approval shall not be unreasonably withheld. In the event Tenant exercises its right to install such a satellite dish or device, Tenant shall ensure that said installation is in compliance with all applicable restrictions, codes, regulations, laws, ordinances and statutes. Tenant shall be solely responsible for obtaining all required permits and the maintenance of such equipment, and any repairs to the roof required by reason of said equipment and its installation or removal.

8.     Utilities, Covenant Costs, Taxes, Insurance and Additional Rent.

Beginning on the Commencement Date, Tenant shall be responsible for the following:

(a)     Tenant shall pay all expenses related to all utilities serving the Leased Premises including, but not limited to, water, sewer, gas and electricity metered to the Leased Premises, and for all charges for telephone service.

(b)     Additionally, if the Leased Premises is subject to the payment of any costs under the Covenants, including without limitation, Common Area (as defined in the Covenants) lighting, security and maintenance costs and the shared expense fee

payable in connection with the road through the adjacent shopping center (the "Covenant Costs"), Tenant shall timely pay such Covenant Costs directly to the third party entitled to such payment. Landlord reserves the right to forward a copy of any Covenant Costs invoice or statement directly to Tenant. In any event, Tenant shall pay such Covenant Costs on or before the due date thereof.

(c)     Tenant shall pay before delinquency all taxes, assessments, license fees, and other charges that are levied and assessed on Tenant's personal property, alterations, and trade fixtures.

(d)     Tenant shall pay Landlord all taxes and government charges and assessments including without limitation all real estate ad valorem taxes, all personal property taxes, sales tax on rents, governmental and public charges and special assessments, if any, for each year imposed against the Leased Premises. If any governmental authority having jurisdiction now or hereafter imposes upon Landlord, pursuant to statute, ordinance, regulation, order or otherwise, a tax, levy, or other imposition based upon the rentals received by Landlord under the terms of this Agreement, Tenant shall, upon demand, pay to Landlord as Additional Rent the amount thereof at the time the rental payments fall due with respect to the term of this Agreement. The tax, levy, or imposition to which reference is made in this Section shall include sales, excise, ad valorem, personal property or similar taxes, but shall not include rollback, charge back or other assessment relating to any period prior to the Term of this Agreement or subsequent expiration of the Term of this Agreement, capital stock, estate, inheritance, income or franchise taxes imposed upon Landlord. Tenant shall pay Landlord, in advance, per month on the first (1st) day of each month as Additional Rent one-twelfth ($1/12^{th}$) of the current annual real estate ad valorem tax assessment, sales tax on rent, personal property taxes, governmental and public charges and special assessments or imposition. If the current assessments or impositions have not been fixed for the applicable year, then those of the preceding tax year shall be used as an estimate for the payments due on the first day of each month. All additional funds required for any difference between the estimated payments and the actual payments shall be paid to Landlord as Additional Rent within fifteen (15) days following Landlord's request and any excess shall be refunded within fifteen (15) days or credited against the subsequent month's(s') Minimum Rent. At its own cost and expense, Tenant may contest the amount or validity, in whole or in part, of any assessment or imposition or seek a reduction in the assessed valuation of the Leased Premises by appropriate proceedings diligently conducted in good faith. Tenant shall first consult with Landlord and obtain its consent before contesting any assessment or charge. Tenant shall promptly pay any contested assessment or imposition unless the proceeding prevents or stays its collection and Tenant deposits with Landlord the amount contested and unpaid, together with a sum to cover all charges that may be assessed against the Leased Premises in such proceeding. Upon final determination of any such proceeding, Tenant shall deliver to Landlord proof of the amount of such assessment or imposition as finally determined. Landlord shall not suffer or sustain any costs or expenses (including, but not limited to,

attorneys' fees) or any liabilities in connection with such proceeding. Landlord shall then pay such assessment or imposition, including interest, fees, penalties, and other liabilities awarded therein out of the sum so deposited with it by Tenant and refund any balance to Tenant. If sums deposited with Landlord are insufficient to pay the full amount of such assessment or imposition and other charges, Tenant shall immediately pay any deficiency. If during such proceeding Landlord in good faith deems the sums deposited with it insufficient, Tenant shall, upon demand, deposit with Landlord such additional sums that Landlord may reasonably request. Landlord, at Tenant's cost and expense, shall join in any such proceedings required by law. Furthermore, Landlord may contest the amount or validity, in whole or part, of any such assessment or imposition or seek a reduction in the assessed valuation of the Leased Premises; provided, however, any expenses of same shall be reimbursed to Landlord by Tenant only to the extent of actual savings realized by Tenant.

(e)     Landlord covenants not to make any changes, additions or alterations to the Leased Premises or surrounding common areas without first obtaining Tenant's written consent. Landlord shall not enter into any covenants, easements or other agreements that prohibit or restrict Tenant's proposed use of the Leased Premises or otherwise change the terms of this Agreement, including the costs incurred by Tenant hereunder, without Tenant's prior written consent, which may be withheld in Tenant's reasonable discretion. Notwithstanding, Landlord may make such alterations required or imposed by law, ordinance or the Covenants, or in the event of an emergency in order to protect Landlord's interest in the Leased Premises.

(f)     All charges and costs arising under this Section 8 shall be deemed Additional Rent. Tenant hereby agrees to indemnify, hold harmless and defend Landlord of and from any charges, liens, loss, damages, expenses, costs or claims including, without limitation, reasonable attorney's fees arising out of Tenant's obligations under this Section 8.

9.     Repairs and Maintenance.

Beginning on the Commencement Date, Tenant shall be responsible for the following:

(a)     Tenant shall, at its sole cost and expense keep the entire Leased Premises and the real estate upon which the Leased Premises are situated, including, but not limited to, the roof, exterior walls, windows, window glass, plate glass, doors, partitions, fixtures, equipment and appurtenances thereto (including lighting, heating and plumbing fixtures, and air conditioning systems), foundations, grounds, drives and parking area in good repair and condition, normal wear and tear and damages caused by casualty (except to the extent that Tenant is obligated to restore such damage in accordance with the terms of this Agreement) excepted, and Tenant shall immediately make all maintenance and/or repairs thereto which may be necessary. Moreover, Tenant shall, at its sole cost and expense, immediately repair or replace any damage or injury to all or any part of the Leased Premises. Tenant shall immediately notify Landlord of any damages to the Leased Premises.

Tenant shall be provided with all the benefits of all third party construction and equipment warranties, bonds and guaranties for this purpose. Tenant shall not be entitled to any abatement or reduction of Minimum or Additional Rent, by reason of any maintenance, repairs, alterations or additions made under the terms of this Agreement. Landlord shall repair all damage caused by the gross negligence or willful misconduct of Landlord or Landlord's agents, members, officers, employees, contractors, sublessees, invitees, or licensees.

(b)     Tenant shall not commit or allow any waste or damage to be committed on any portion of the Leased Premises, and at the termination of this Agreement, by lapse of time or otherwise, Tenant shall deliver the Leased Premises to Landlord in a condition at least as good as the condition the Leased Premises were in after completion of all Project Improvements, normal wear and tear, damages caused by casualty (except to the extent that Tenant is obligated to restore such damage in accordance with the terms of this Agreement) and approved alterations excepted. Except as provided in Section 13, the cost and expense of any maintenance and/or repairs necessary to restore the condition of the Leased Premises as provided in this paragraph shall be borne by Tenant.

(c)     Maintenance and repairs required to be made by Tenant, if not otherwise undertaken by Tenant without notice from Landlord, shall be completed not more than thirty (30) days (and such reasonably longer period of time in the event repairs cannot be completed within said 30 day period for reasons beyond Tenant's control) from and after receipt by Tenant of written notice from Landlord of the necessity to make such maintenance or repairs. If Tenant refuses or neglects to maintain or repair as required hereunder to the reasonable satisfaction of Landlord, Landlord may but shall not be required to make such repairs without liability to Tenant for any loss, injury or damage that may accrue to Tenant's merchandise, equipment, inventory, fixtures or other property or to Tenant's business by reason thereof; and upon completion thereof, Tenant shall pay Landlord's cost for making such repairs, plus ten percent (10%) for overhead, immediately upon presentation of a bill therefor, as Additional Rent.

10.    Casualty Insurance; Public Liability Insurance.

Beginning on the Commencement Date, Tenant shall be responsible for the following:

(a)     Tenant will maintain and pay all insurance premiums for Special Form Property Insurance covering all structures and improvements on the Leased Premises, the Surplus Premises and all personal property owned by Tenant, with coverage for perils as set forth on the Causes of Loss-Special Form or its equivalent, with a coverage extension for the perils of flood and earthquake, in an amount equal to full replacement cost of such structures and improvements, and in any no event, no less than the full replacement value or $7,500,000, whichever is greater, ("Property Insurance"). Such Property Insurance shall contain an agreed valuation provision in lieu of any co-insurance clause, an increased cost of construction endorsement, changes in laws and ordinances endorsement, debris

{00037482 9 }                                    - 10 -

removal coverage, a waiver of subrogation endorsement in favor of Landlord and shall name the Landlord as loss payee.

(b)    Tenant agrees to carry at all times during the term of this Agreement, at its sole cost and expense, for the benefit of Landlord and Tenant, general public liability insurance against claims for bodily injury, death or property damage occurring upon, in or about the Leased Premises, with combined single limits of not less than Two Million and No/100 dollars ($2,000,000.00) per occurrence for bodily injury or property damage, and Five Million and No/100 dollars ($5,000,000.00) in the aggregate. Tenant shall cause Landlord to be designated as an additional insured on such general public liability insurance policy.

(c)    Tenant shall at all times during the term of this Agreement, at its sole cost and expense, maintain a policy or policies of business income insurance at a level sufficient to pay the Minimum Rent and Additional Rent herein provided. In the event the Leased Premises are destroyed, whether totally or partially, Tenant nevertheless shall remain bound by the terms and provisions of this Agreement unless this Agreement is terminated in accordance with the terms hereof.

(d)    Tenant shall not be allowed possession of the Leased Premises absent the insurance policies required by this Section 10. Each policy of insurance, or a certificate thereof, shall be promptly deposited with Landlord and shall provide for thirty (30) days advance written notice to the Landlord prior to cancellation or change. Each policy of insurance or certificate shall be accompanied by a waiver of subrogation endorsement in favor of Landlord. Each policy of insurance or certificate shall be accompanied by evidence of the payment of premiums therefor in a form reasonably satisfactory to Landlord. If Tenant fails to furnish Landlord with such policy or policies of insurance or such certificates prior to occupancy of the Leased Premises, or at any time thereafter, Landlord may cause such insurance to be issued and charged to the account of Tenant; provided that nothing herein shall be interpreted as requiring Landlord to secure such insurance. All insurance shall be with companies licensed to do business in the state where the Leased Premises is located, or to be located, and the form of the policies or certificates shall be subject to Landlord's approval, which approval shall not be unreasonably withheld.

11.    Casualty and Restoration.

Beginning on the Commencement Date, Tenant shall be responsible for the following;

(a)    If the Leased Premises should be damaged by fire, the elements, unavoidable accident or other casualty to the extent that the Leased Premises are rendered inaccessible for business purposes or totally or partially unusable by Tenant in the ordinary course of Tenant's business, Tenant shall immediately, but no later than ten (10) of such casualty, provide notice to Landlord of such casualty. Within thirty (30) days following such casualty, Tenant shall notify Landlord of the amount of time Tenant estimates it will take to repair such damage ("Tenant's

Estimate"). As long as Landlord and Landlord's mortgagee provide Tenant with adequate (as determined by Tenant in Tenant's reasonable discretion) assurances that insurance proceeds are available to Tenant, Tenant shall, to extent that such insurance proceeds are made available to Tenant, repair the same and this Agreement shall remain in full force and effect with no reduction of the Minimum Rent and Additional Rent.

(b)     Notwithstanding anything herein contained to the contrary, if the loss is expected to render the Leased Premises totally inaccessible or unusable by Tenant in the ordinary conduct of Tenant's business for more than six (6) months, then Tenant may terminate this Agreement by written notice to the Lender and shall assign any insurance claims relating to the improvements located on the Leased Premises and the Project Improvements to Landlord.

12.     Compliance with Laws, Rules and Regulations.

Tenant shall, at Tenant's sole cost and expense, comply with all of the requirements of all county, municipal, state, federal and other applicable governmental authorities, now in force, pertaining to Tenant's use and occupancy of the Leased Premises, and shall faithfully observe in the use of the Leased Premises all municipal and county ordinances and state and federal statutes now in force or which may hereafter be in force.

13.     Condemnation.

(a)     If the Leased Premises are taken under the power of eminent domain or sold under the threat of the exercise of such power to the extent that it substantially impairs Tenant's use of the Leased Premises (as determined by Tenant in its reasonable discretion) (the "Condemnation"), this Agreement shall be terminated on the date when the Leased Premises shall be so taken, and the rent shall be prorated as of that date. Such termination shall be without prejudice to the rights of either party to recover compensation from the condemning authority for any loss or damage caused by the Condemnation. Neither party shall have any rights in or to any award made to the other by the condemning authority. Each party expressly covenants and agrees not to assert a claim to any portion of an award in favor of the other. This covenant shall survive the termination of this Agreement.

(b)     If Tenant's use of the Leased Premises is not substantially impaired by Condemnation as determined above and only a portion of the Leased Premises is taken by such action then this Agreement shall terminate only as to the part so taken as of the date the condemning authority takes title or possession. This Agreement shall remain in full force and effect as to the portion of the remaining Leased Premises except that Minimum Rent shall be apportioned as of the date of vesting of title and Tenant shall be entitled to a pro rata reduction in the Minimum Rent payable hereunder based on the portion that the value of the space taken bears to value of the Leased Premises immediately prior to such taking.

(c)     In either such event, the entire compensation award for the leasehold and

reversion shall belong to Landlord without deduction for any present or future estate of Tenant, and Tenant hereby assigns to Landlord all of its right, title and interest to such award. Tenant shall execute all required documents to evidence such result. Tenant shall, however, be entitled to claim, prove and receive in the condemnation proceedings any award allowed for loss of business, goodwill, fixtures and or other equipment installed by it, but only if and to the extent such award is in addition to the award for the land, building and other improvements (or portions thereof), containing the Leased Premises. If this Agreement is not terminated, as herein provided, Landlord shall, to the extent of severance damages received by it in connection with such condemnation, promptly repair any damages to the Leased Premises caused by such condemnation, except to the extent that Tenant has been reimbursed therefor by the condemning authority. Tenant acknowledges that any portion of a condemnation award that is designated, awarded or paid for repairs shall belong to and immediately be delivered to Landlord. Tenant covenants to immediately notify Landlord if the Landlord's portion of the condemnation award is paid to Tenant and Tenant covenants to immediately pay to Landlord any such amount. If Landlord fails to provide adequate assurances to Tenant within ten (10) days of the conclusion of the condemnation proceeding that all amounts necessary to repair any damages to the Leased Premises caused by such condemnation are readily available to Landlord and will be promptly utilized for such repair, then Tenant may terminate this Agreement by thirty (30) days prior written notice to Landlord.

14.     Time is of the Essence.

Time is of the essence under this Agreement.

15.     Hold Harmless.

Landlord shall not be liable to Tenant or Tenant's owners, officers, managers, employees, agents, servants, licensees, visitors, guests and/or business invitees, or to any other person, for any injury to person or damage to property on or about the Leased Premises for any reason whatsoever, except for injury or damages caused by the gross negligence or willful misconduct of Landlord or its agents or contractors. Tenant agrees to indemnify, hold harmless and defend Landlord of and from any loss, expenses or claims including, without limitation, reasonable attorney's fees arising out of any such damage or injury arising as a result of Tenant's (or Tenant's owners, officers, managers, employees, agents, servants, licensees, visitors, guests and/or business invitees) acts at, or use or occupancy of, the Leased Premises.

16.     Landlord's Lien.

(a)     In addition to any statutory landlord's lien, Landlord shall have, at all times, a valid security interest to secure payment of all rents and other sums of money becoming due hereunder from Tenant, and to secure payment of any damages or loss which Landlord may suffer by reason of the breach by Tenant of any covenant, agreement, or condition contained herein, upon the Project Improvements. Such property shall not be removed therefrom without the consent of Landlord until all arrearages in rent as well as any and

all other sums of money then due to Landlord hereunder shall first have been paid and discharged and all of the covenants, agreements and conditions hereof have been fully complied with and performed by Tenant. Tenant hereby grants Landlord the right to file a uniform commercial code financing statement(s) and fixture filing(s) to perfect such security interest and any renewals. Upon the occurrence of an event of default by Tenant, Landlord may, in addition to any other remedies provided herein, enter upon the Leased Premises and take possession of any portion of the Project Improvements, without liability for trespass or conversion, and sell the same at public or private sale, with or without having such property at the sale, after giving Tenant reasonable notice of the time and place of any public sale or of the time after which any private sale is to be made, at which sale the Landlord or its assigns may purchase unless otherwise prohibited by law. Unless otherwise provided by law, and without intending to exclude any other manner of giving Tenant reasonable notice, the requirement of reasonable notice shall be met if such notice is given in the manner prescribed in this Agreement at least five (5) days before the time of sale. Any sale made pursuant to the provision of this Paragraph shall be deemed to have been a public sale conducted in a commercially reasonable manner if held in the Leased Premises or where such property is located after notice of the time, place and method of sale and a general description of the types of property to be sold has been published in a local daily newspaper at least one time before the date of the sale. The proceeds from any such disposition, less any and all expenses connected with the taking of possession, holding and selling of any portion of the Project Improvements (including reasonable attorney's fees and legal expenses) shall be applied as a credit against the indebtedness secured by the security interest granted in this Paragraph. Any surplus shall be paid to Tenant or as otherwise required by law. Tenant shall pay any deficiencies forthwith. Any statutory lien against any portion of the Project Improvements for rent is not hereby waived, the security interest herein granted against any portion of the Project Improvements being in addition and supplementary thereto.

(b) Within twenty (20) days after request therefore, Landlord agrees to execute a lien waiver on Tenant's lender's written form with respect to the personal property of Tenant located at the Leased Premises, including but not limited to Tenant's inventory, business equipment and proceeds therefrom, whether now owned or hereafter acquired, which lien waiver form shall subject to the reasonable comments of Landlord.

17. **Landlord's Warranties and Covenants.**

Landlord represents and warrants to and covenants with Tenant that:

(a) Subject to the Purchase & Sale Agreement between DDR Southeast Macon, L.L.C., a Delaware limited liability company (the "Seller") and the Landlord, Landlord will acquire the Leased Premises in fee simple prior to the Construction Commencement Date. There are no agreements, restrictive covenants or exclusive or prohibited use provisions, other than the Covenants, to which Landlord is a party or affecting the Leased Premises that in any way prohibit or restrict Tenant's proposed use of the Leased Premises as a retraining and educational facility;

(b) There are no agreements, restrictive covenants or exclusive or prohibited use provisions

contained in the leases of any other tenants of the Property, other than the Covenants, to which Landlord is a party or affecting the Leased Premises that in any way prohibit or restrict Tenant's proposed use of the Leased Premises as an educational facility; and

(c)    Landlord will join Tenant in any enforcement of any third party obligation under the Covenants, at Tenant's cost and expense.

(d)    Landlord has delivered or will deliver within twenty (20) days following the Effective Date, Landlord's Phase I Report (the "Phase I") addressed to Tenant.

18.    Quiet Enjoyment.

Landlord warrants that it has full right to execute and to perform this Agreement and to grant the estate leased, and, that Tenant, upon payment of the required rents and performing the terms, conditions, covenants and agreements contained in this Agreement, shall peaceably and quietly have, hold and enjoy the Leased Premises during the full term of this Agreement as well as any extension or renewal without let or hindrance by Landlord or its agents; provided, however, that Tenant accepts this Agreement subject and subordinate to the Covenants.

19.    Hazardous Materials.

(a)    Landlord makes no representation regarding Hazardous Materials affecting the Leased Premises. Landlord shall have performed a Phase I study and if required a Phase II study which shall be jointly certified to Landlord and Tenant.

(b)    Neither Tenant, its successors or assigns, nor any permitted assignee, permitted sublessee or other person acting at the direction of Tenant shall: (a) manufacture, treat, use, store or dispose of any Hazardous Materials (as hereinafter defined) on the Leased Premises or any part thereof in violation of any applicable Environmental Laws; or (b) knowingly permit the release of a Hazardous Material from within the Leased Premises or any part thereof.

(c)    In the event of a release of Hazardous Material by Tenant or any of Tenant's agents, members, officer, employees, contractors, invitees, licensees or sublessees, Tenant shall indemnify, protect, defend and hold Landlord harmless from and against any and all costs, fees, damages, losses, expenses and/or liabilities of any kind or nature in any way related to the release, removal, transportation and/or disposal of such Hazardous Materials, which obligation shall survive the expiration or earlier termination of this Agreement. If any action or proceeding be brought against Landlord by reason of such claim, Tenant upon notice from Landlord shall defend the same at Tenant's expense by counsel reasonably satisfactory to Landlord. In the event Landlord incurs any costs, fees, damages, losses, expenses, and/or liabilities in connection with a release of Hazardous Materials by Tenant or any of Tenant's agents, members, officer, employees, contractors, invitees, licensees or sublessees, Tenant shall pay such costs, fees, and/or expenses within ten (10) days of written request from Landlord. Landlord shall not incur any fees or costs before notifying Tenant that it is likely

to incur such fees and costs unless Tenant takes corrective action.

(d)    In the event of a release of Hazardous Material by Landlord or any of Landlord's agents, members, officer, employees, contractors, invitees, licensees or sublessees or if the presence of any Hazardous Material in or around the Leased Premises is identified in the Phase I, Landlord shall indemnify, protect, defend and hold Tenant harmless from and against any and all costs, fees, damages, losses, expenses and/or liabilities of any kind or nature in any way related to the release, removal, transportation and/or disposal of such Hazardous Materials, which obligation shall survive the expiration or earlier termination of this Agreement. If any action or proceeding be brought against Tenant by reason of such claim, Landlord upon notice from Tenant shall defend the same at Landlord's expense. In the event Tenant incurs any costs, fees, damages, losses, expenses, and/or liabilities in connection with a release of Hazardous Materials by Landlord or any of Landlord's agents, members, officer, employees, contractors, invitees, licensees or sublessees, Landlord shall pay such reasonable and direct costs, fees, and/or expenses within ten (10) days of written request from Tenant. Tenant shall not incur any fees or costs before notifying Landlord that it is likely to incur such fees and costs unless Landlord takes corrective action.

(e)    Landlord and Tenant acknowledge and agree that Tenant is not assuming any liability or responsibility for Hazardous Materials located on the Leased Premises through no fault of Tenant or any of Tenant's agents, members, officer, employees, contractors, invitees, licensees or sublessees and that Tenant is not an "owner" or "operator" of the Leased Premises with respect to such conditions. If any Hazardous Materials are present on or under the Leased Premises through no fault of Tenant or any of Tenant's agents, members, officer, employees, contractors, invitees, licensees or sublessees, and such Hazardous Materials present a substantial threat to human health or safety and such condition remains unremedied for a period of six (6) months after written notice from Tenant to Landlord, then Tenant may terminate this Agreement upon written notice to Landlord.

(f)    The term "Hazardous Materials" shall mean any waste, substance or material that is: (i) identified in Section 101(14) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as the same may be amended from time to time (herein called "CERCLA"); or (ii) determined to be hazardous, toxic, a pollutant or contaminant, under federal, state or local law, including, but not limited to, petroleum and petroleum products. The term "release" shall have the meaning given to such term in Section 101(22) of CERCLA.

20.    Landlord's Right of Entry.

Without releasing Tenant from any of its obligations hereunder, Landlord shall have the right to enter the Leased Premises for the following: inspection; cleaning or making repairs if Tenant fails to comply with its obligations in that regard; alterations or additions as Landlord may deem necessary or desirable if Tenant fails to comply with its obligations in that regard; determining

Tenant's use of the Leased Premises; or determining if an act of default under this Agreement has occurred. Landlord may also show the Leased Premises to prospective lenders, purchasers, or prospective tenants, all in a manner so as to interfere as little as reasonably possible with the business of Tenant.

21.    Assignment, Sale or Sublease.

Landlord shall have the unrestricted right to sell, transfer and assign, in whole or in part, or otherwise dispose of its rights and obligations in the building and property that are the subject of this Agreement. Upon such sale, transfer or assignment, Landlord shall be released from the terms and conditions of this Agreement and Tenant shall look to such assignee or transferee to satisfy the landlord's obligations under this Agreement; provided, however, Landlord shall not be released from its obligations arising out of the construction of the Project Improvements, until such obligations are fulfilled in accordance with the terms of this Agreement. Tenant shall have the unrestricted right to sublet, in whole or in part, the portion of the Premises that are not initially used as a Virginia College facility. Tenant, however, shall not assign this Agreement without the prior written consent of Landlord. Notwithstanding any provision of this Agreement to the contrary, Tenant may assign or sublease the Leased Premises without Landlord's consent to a corporation controlling, controlled by, or under common control with, Tenant, to the surviving corporation in a merger or other corporate reorganization in which Tenant is involved, or to a purchaser of all or substantially all of the assets of Tenant (collectively "Tenant Affiliate"); provided that all of the following conditions are satisfied (a "Permitted Transfer"): (a) Tenant is not then in default under this Agreement after giving effect to applicable notice grace and cure periods; (b) Tenant's successor shall own all or substantially all of the assets of Tenant; and (c) Tenant's successor shall have a net worth which is at least equal to the greater of Tenant's net worth at the Effective Date. Upon request by Landlord, Tenant shall provide Landlord with information and documentation showing that each of the above conditions has been satisfied. In the event of such an assignment or sublease to a Tenant Affiliate, Tenant shall remain liable and responsible for all obligations under this Agreement unless expressly released in writing by Landlord. A public offering, issuance, transfer or distribution of Tenant's stock (including distributions pursuant to an employee benefit program), in any amount, shall not constitute an assignment for the purposes of this Agreement. Except for an assignment or sublease to a Tenant Affiliate in accordance with this Section, Tenant shall at all times remain liable for the payment of Minimum Rent and Additional Rent herein and for compliance with all of its other obligations under this Agreement. Upon the occurrence of an "event of default" as defined herein, if all or any part of the Leased Premises are then assigned or sublet, Landlord, in addition to any other remedies provided by this Agreement or provided by law, may at its option, collect directly from the assignee or subtenant, and/or the Tenant, both of said parties being jointly and severally bound, all rents becoming due to Tenant by reason of the assignment or sublease, and Landlord shall have a security interest in the Project Improvements on the Leased Premises to secure payment of such sums. Any collection directly by Landlord from the assignee or subtenant shall not be construed to constitute a novation or a release of Tenant from the further performance of its obligations under this Agreement.

22.    Holding Over.

In the event of holding over by Tenant after the expiration or termination of this Agreement, the

hold over shall be as a tenant at will on a day to day basis and all of the terms and provisions of this Agreement, not otherwise in conflict with such status, shall be applicable during that period, except that Tenant shall pay Landlord as rental for the period of such hold over an amount equal to one hundred fifty percent (150%) times the rent which would have been payable by Tenant had the hold over period been a part of the original Term. Tenant agrees to vacate and deliver the Leased Premises to Landlord immediately upon expiration or termination of the Term in a condition at least as good as the condition of the Leased Premises were in on the Commencement Date, normal wear and tear, damages caused by casualty (except to the extent that Tenant is obligated to restore such damage in accordance with the terms of this Agreement) and approved alterations excepted. The rental payable during the hold over period shall be payable to Landlord on demand. No holding over by Tenant, whether with or without consent of Landlord, shall operate to extend this Agreement

23.     Default by Tenant.

The following events shall be deemed to be an "event of default" by Tenant under the terms of this Agreement:

(a)        Tenant shall fail to pay any installment of the Minimum Rent, Additional Rent or any other monetary payment required under this Agreement to be paid to or on behalf of Landlord or any other person or entity hereby reserved when due, and such failure shall continue for a period of five (5) days or;

(b)        Tenant or any Guarantor shall become insolvent, or shall make a transfer in fraud of creditors or;

(c)        Tenant or any Guarantor shall file a petition under any section or chapter of the United States Bankruptcy Act, as amended, or under any similar law or statute of the United States or any State thereof; or Tenant shall be adjudged bankrupt or insolvent in proceedings filed against Tenant thereunder or;

(d)        A receiver or trustee shall be appointed for all or substantially all of the assets of Tenant or any Guarantor;

(e)        Tenant shall desert or vacate any substantial portion of the Leased Premises or permit a lien (including, but not limited to, a construction lien or a material men's lien) to be filed or recorded against such Leased Premises, which lien shall not have been bonded or removed or canceled within the time herein specified or;

(f)        Tenant shall fail to cure any monetary default within ten (10) days after written notice thereof to Tenant, or fail to cure any non-monetary default within thirty (30) days after written notice thereof to Tenant; provided, however, that Landlord shall not be required to provide Tenant with more than two (2) default notices during any consecutive twelve (12) month period and provided further than during the final twelve (12) months of the Term, Landlord shall be required to provide Tenant with more than one (1) default notice.

24.     Remedies for Tenant's Default.

Upon the occurrence of any of the events of default set forth herein, and following any applicable notice, Landlord shall have the option to pursue any one or more of the following remedies:

(a)    Terminate this Agreement, in which event Tenant shall immediately surrender the Leased Premises to Landlord in a condition at least as good as the condition the Leased Premises were in after completion of all Project Improvements, normal wear and tear, damages caused by casualty (except to the extent that Tenant is obligated to restore such damage in accordance with the terms of this Agreement) and approved alterations excepted, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which it may have for possession or arrearages in rent, enter upon and take possession of the Leased Premises and expel or remove Tenant and any other person who may be occupying such Leased Premises or any part thereof, by force if necessary, without being liable for prosecution of any claim of damages therefor. Landlord may sell or relet the Leased Premises and the amount Landlord receives (less any and all costs Landlord incurs in such disposition, including, but not limited to, reasonable overhead, employee and officer compensation, lease commissions and any costs of improvements to the Leased Premises) shall be considered a mitigation of the damages of Landlord hereunder;

(b)    Enter upon and take possession of the Leased Premises and expel or remove Tenant and any other person who may be occupying such Leased Premises or any part thereof, by force if necessary, without being liable for prosecution or any claim for damages therefor, and relet the Leased Premises and receive the rent therefor; and Tenant agrees to pay to the Landlord on demand any deficiency that may arise by reason of such reletting and all expenses of reletting as it accrues (the "Accrued Deficiencies"). The amount Landlord receives (less any and all costs Landlord incurs in such reletting, including, but not limited to, lease commissions and any cost of improvements to the Premises) shall be considered a mitigation of the damages of Landlord hereunder. In the event that Tenant shall fail to pay to Landlord any portion of the Accrued Deficiencies within ten (10) days of Landlord's demand (provided, however, Landlord shall not be required to provide such demand more than two (2) occasions during any twelve (12) month period during the term of this Agreement), Landlord may elect to receive as damages the sum of (a) all amounts accrued through the date of the termination of Tenant's possessory rights, and (b) an amount equal to the total Minimum Rent that Tenant would have been required to pay for the remainder of the then-current term of this Agreement (excluding unexercised renewal options) discounted to present value at the Treasury yield closest approximating the time remaining in the balance of the term of this Agreement, minus the then present fair rental value of the Leased Premises for the remainder of such term, similarly discounted, after deducting all anticipated costs of reletting. Upon payment of such damages, this Agreement shall terminate;

(c)    Enter upon the Leased Premises without being liable for prosecution or any claim for damages thereof, and do whatever Tenant is obligated to do under the terms of

this Agreement; and Tenant agrees to reimburse Landlord on demand for any expenses which Landlord may incur in thus effecting compliance with Tenant's obligations under this Agreement, and Tenant further agrees that Landlord shall not be liable for any damages resulting to the Tenant from such action, whether caused by the negligence of Landlord or otherwise; and/or;

(d)     Immediately secure the Leased Premises to protect the subject of the Landlord's security interests. It is expressly understood that this action shall not terminate this Agreement and Tenant shall have the right to possession of the Leased Premises once the event(s) of default are cured to the satisfaction of Landlord. Tenant further agrees that Landlord shall not be liable for any damages to Tenant resulting from Landlord's action.

(e)     Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided by law, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any rent due to Landlord hereunder or of any damages accruing to Landlord by reason of the violation of any of the terms, provisions and covenants herein contained. No waiver by Landlord of any violation or breach of any of the terms, provisions and covenants herein contained shall be deemed or construed to constitute a waiver of any other violation or breach of any of the terms, provisions and covenants herein contained. Landlord's acceptance of the payment of rental or other payments hereunder after the occurrence of an event of default shall not be construed as a waiver of such default, unless Landlord so notifies Tenant in writing. Forbearance by Landlord to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default. If, on account of any breach or default by Tenant in Tenant's obligations under the terms and conditions of this Agreement, it shall become necessary or appropriate for Landlord to employ or consult with an attorney concerning or to enforce or defend any of Landlord's rights or remedies hereunder, Tenant agrees to pay reasonable attorneys' fees. No act or thing done by the Landlord or its agents during the term hereby granted shall be deemed an acceptance of the surrender of the Leased Premises, and no agreement to accept a surrender of said Leased Premises shall be valid unless in writing signed by Landlord. The receipt by Landlord of rent with knowledge of the breach of any covenant or other provision contained in this Agreement shall not be deemed or construed to constitute a waiver of any other violation or breach of any of the terms, provisions and covenants contained herein.

Notwithstanding anything herein to the contrary, Landlord shall have a duty to mitigate its damages.

25.     **Landlord's Default.**

If Landlord should fail to perform as required under this Agreement, Tenant shall give Landlord written notice of the alleged default and Landlord shall have thirty (30) days to cure the default; provided, if a cure of a non-monetary default cannot be completed with said 30-day period

Landlord shall not be deemed in default so long as Landlord promptly commences and diligently pursues such cure within said 30-day period. If the default does not inhibit Tenant from immediately operating its business and Landlord fails to cure the default within thirty (30) days, Landlord shall have the right to extend the cure period if Landlord is diligently attempting to cure the default. No default that does not substantially inhibit Tenant's right and ability to operate its business shall be grounds for the termination of this Agreement. Tenant shall have all remedies available at law and equity, together with those expressly provided herein, together with the right to cure such default and offset the cost of such cure against Minimum Rent. Upon Landlord's default in its obligation to pay (or credit) money, said amount shall bear interest beginning five (5) days after the date due at the rate per annum of twelve percent (12%).

26.     Intentionally Omitted.

27.     Force Majeure.

Whenever a period of time is herein prescribed for action to be taken by either party to this Agreement, the party charged with such obligation shall not be liable or responsible for, and there shall be excluded from the computation for any such period of time, any delays due to strikes, riots, acts of God, shortages of labor materials, war, terrorist acts, governmental laws, regulations, or restrictions, or any other causes of any kind whatsoever which are beyond the control of such party (collectively, "Force Majeure"). Except for impact that Section 2(a)(ii) above has on the establishment of the Commencement Date, Force Majeure shall not serve to extend any payment obligations of Tenant hereunder.

28.     Interest on Amounts Owed.

In addition to the Late Fee, and not in lieu thereof, all amounts owed by Tenant under this Agreement not paid when due shall accrue interest at one and one-half percent (1½ %) per month, or the highest rate allowed by law, whichever is lower.

29.     Attorney's Fees.

In the event either party hereto defaults in the performance of any of the terms, covenants, agreements or conditions contained in this Agreement, and the other party places the enforcement of all or any part of this Agreement, the collection of any rent due or to become due or recovery of the possession of the Leased Premises in the hands of an attorney, such defaulting party agrees to pay the other party's reasonable attorneys' fees for the services of such attorneys, whether suit is actually filed or not.

30.     Estoppel Certificate.

Upon taking occupancy, and from time to time as requested by either party, the other party shall, upon ten (10) days' notice, issue its estoppel letter certifying any matters reasonably requested by the other party and that there are no known defaults by either party or, if there are defaults, specifying the defaults and the action necessary to cure. In the event Tenant has filed bankruptcy or other debtor protection proceeding and while such proceeding is pending, Tenant hereby appoints Landlord its attorney-in-fact during such period to execute and deliver an estoppel in favor of Landlord's lender, which appointment constitutes a power coupled with an interest,

irrevocable during the term of this Agreement.

31.  Offset Statement, Subordination and Attornment.

a.  Within ten (10) days after request therefor by Landlord, or in the event that upon any sale, assignment or hypothecation of the Leased Premises by Landlord an offset statement (a/k/a an estoppel certificate) shall be required from Tenant, Tenant agrees to and shall deliver in recordable form a certificate or estoppel to any proposed mortgagee or purchaser or to Landlord, certifying (if such be the case) that this Agreement is in full force and effect and that there are no defenses or offsets thereto, or stating those claimed by Tenant. In the event Tenant has filed bankruptcy or other debtor protection proceeding and while such proceeding is pending, Tenant hereby appoints Landlord its attorney-in-fact during such period to execute and deliver such statement in favor of Landlord's lender, which appointment constitutes a power coupled with an interest, irrevocable during the term of this Agreement.

b.  Within ten (10) days after request therefore by Landlord, Tenant agrees to and shall execute a reasonable subordination, non-disturbance and attornment agreement ("SNDA"), which shall contain a provision that, in the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under any mortgage made by Landlord covering the Leased Premises, Tenant shall attorn to the purchaser upon any such foreclosure or sale and recognize such purchaser as Landlord under this Agreement. The SNDA shall contain Landlord's lender's standard non-disturbance language and any other reasonable terms required by such lender or any purchaser of the Leased Premises or such purchaser's lender. Any SNDA shall be subject to Tenant's reasonable comments and shall acknowledge Tenant's rights under this Agreement (including Tenant's offset rights herein) as long as Tenant is not in default. Until the execution of the SNDA, any such mortgage shall remain subordinate to this Agreement.

32.  Successors.

This Agreement shall be binding and inure to the benefit of Landlord and Tenant and their respective heirs, personal representatives, successors, subtenants and assigns. It is hereby covenanted and agreed that should Landlord's interest in the Leased Premises cease to exist for any reason during the terms of the Agreement, then (subject to the terms of the SNDA in the event of a foreclosure), this Agreement nevertheless shall remain unimpaired and in full force and effect and Tenant hereunder agrees to attorn to the then owner of the Leased Premises.

33.  Notice.

a.  All payments required to be made by Tenant to Landlord shall be payable to Landlord at the address set forth below, or at any other address within the United States as Landlord may specify from time to time by written notice. All payments of any kind, including without limitation Minimum Rent, Additional Rent, late

charges and any other amounts, must be received by Landlord at such address on or before the time specified for payment of such amounts.

b.  Any notice or document required or permitted to be delivered by this Agreement shall be deemed to be delivered when deposited in the United States Mail, postage prepaid, certified mail, return receipt requested, overnight courier, or when sent by facsimile, provided delivery is mechanically confirmed, addressed to the parties at the respective addresses set forth below and actually received at such addresses.

|  | |
|---|---|
| **Landlord:** | **Tenant:** |
| 599 Highland Colony Parkway, Suite 120 | Virginia College, LLC |
| Ridgeland, Mississippi 39157 | 3660 Grandview Parkway, Suite 300 |
| ATTN: Messrs. J. Wilson La Foe & J. F. Davis | Birmingham, Alabama 35243 |
| E-mail: jwlafoe@aol.com | Attn: General Counsel's Office-Roger |
| E-mail: jfdavis.dl@comcast.net | Swartzwelder and Ben DeGweck |
| FAX: (601) 605-0648 | FAX: (205) 329-7857 |
| | |
| With copy to: | With copy to: |
| | |
| Jon A. Gottlieb, Esquire | Stephen W. Stallcup, Esq. |
| FLYNN & GOTTLIEB, P.A. | Maynard, Cooper & Gale, P.C. |
| 800 Johnson Ferry Road, N.E. | 1901 Sixth Avenue North |
| Atlanta, Georgia 30342-1417 | 2400 Regions/Harbert Plaza |
| E-mail: jong@lawfg.com | Birmingham, AL 35203 |
| FAX: (404) 845-0888 | FAX: (205) 254-1999 |

34.  Interpretation and Venue.

This Agreement shall be construed under and governed by the laws of the state in which the Leased Premises are located. All headings preceding the text of the several provisions are inserted solely for convenience of reference and none of them shall constitute a part of this Agreement or affect its meaning, interpretation or effect. Venue for any action brought by Landlord and Tenant in relation to this Agreement shall be in the County and judicial district or division in which the Leased Premises are located.

35.  Reports.

Tenant covenants and agrees to turn over to Landlord upon request all plans, specifications, engineering drawings, surveys, information, inspections, tests, audits, studies, reports, title commitments and materials compiled or accumulated by Tenant in connection with the Leased Premises. This covenant shall survive the termination of this Agreement.

36.  Lease Guaranty.

Education Corporation of America, a Delaware corporation (the "Guarantor"), for value received

and in consideration of and as an inducement to Landlord entering into this Agreement with Tenant, said inducement hereby acknowledged by Tenant, hereby absolutely and unconditionally guarantees the timely satisfaction by said Tenant of all payment and performance obligations under this Agreement as fully as if the Guarantor was directly liable as Tenant hereunder. On or before the Effective Date Guarantor shall execute Lease Guaranty attached hereto as Exhibit "D". This is a guaranty of payment and performance and not a guaranty of collection. Nothing herein shall require Landlord to pursue and exhaust its remedies and Tenant or the Leased Premises as a condition to exercising its remedies against Guarantor under this Section 36.

37.    Waiver.

The waiver by Landlord of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition. The subsequent acceptance of rent hereunder by Landlord shall not be deemed to be a waiver of any preceding breach by Tenant of any term, covenant or condition of this Agreement other than the failure by Tenant to pay the particular rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such rent. No covenant, term or conditions of this Agreement shall be deemed to have been waived by Landlord, unless such waiver shall be in writing by Landlord.

38.    Accord and Satisfaction.

No payment by Tenant or receipt by Landlord of a lesser amount than the rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent; nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed to be an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy in this Agreement provided.

39.    Entire Agreement; Construction.

a.        This Agreement and the exhibits and addenda, if any, attached hereto and forming a part hereof, set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Leased Premises, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than as are herein set forth. Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Agreement shall be binding upon Landlord or Tenant unless reduced to writing and signed by them.

b.        Each of the parties hereto materially participated in the drafting of this Agreement and, therefore, in the construction of any of the provisions hereof, such provisions shall not be construed more harshly against one or the other.

40.    No Partnership.

Landlord does not, in any way or for any purpose, become a partner of Tenant in the conduct of its business, or otherwise, or a joint venturer or a member of a joint enterprise with Tenant. Provisions of this Agreement relating to the Additional Rent payable hereunder are included

{00037482 9 }                                           - 24 -

solely for the purpose of providing a method whereby the rent is to be measured and ascertained.

41.    Captions and Section Numbers.

The captions and section numbers appearing in this Agreement are inserted only as a matter of convenience and in no way affect this Agreement.

42.    Broker's Commission.

Each of the parties represents and warrants that there are no claims for brokerage commissions or finder's fees in connection with the execution of this Agreement and each of the parties agrees to indemnify the other against and hold it harmless from all liabilities arising from any such claim (including, without limitation the cost of counsel fees in connection therewith).

43.    Partial Invalidity.

If any term, covenant or condition of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term, covenant or condition to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant or condition of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

44.    No Option.

The submission of this Agreement for examination does not constitute a reservation of or option for the Leased Premises, and this Agreement becomes effective as a lease only upon execution and delivery thereof by Landlord and Tenant.

45.    Recording.

a..    Tenant shall not record this Agreement without the written consent of Landlord; however, upon the request of either party hereto the other party shall join in the execution of a memorandum or so-called "short form" of this Agreement for the purpose of recordation. Said memorandum or short form of this Agreement shall describe the parties, the Leased Premises and the term of this Agreement and shall incorporate this Agreement by reference.

b.    Landlord shall have the right to record this Agreement and, at the request of Landlord, Tenant agrees to execute the necessary acknowledgments required to record this Agreement, in either short form or long form.

c.    The party requesting recordation shall be responsible for all costs thereof.

46.    Financial Information.

Upon written request from Landlord to Tenant, not more often than once in every twelve (12) month period, Tenant will furnish Landlord with audited financial statements and current

financial statements for Tenant and Guarantor not later than fourteen (14) days following such request. The failure to fully satisfy Landlord's request shall not bar another request for the balance of such statements prior to the expiration of said 12-month period. Such statements of financial condition shall include balance sheets, profit and loss statements and any related footnotes.

47.    Waiver of Jury Trial and Counterclaims.

THE PARTIES HERETO SHALL, AND THEY HEREBY DO, WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HEREBY AGAINST THE OTHER ON ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE RELATIONSHIP WITH LANDLORD AND TENANT, TENANT'S USE OR OCCUPANCY OF THE LEASED PREMISES, AND/OR ANY CLAIM OF INJURY OR DAMAGE. IN THE EVENT LANDLORD COMMENCES ANY PROCEEDINGS FOR NON-PAYMENT OF MINIMUM RENT OR ADDITIONAL RENT, TENANT WILL NOT INTERPOSE ANY COUNTERCLAIM OF WHATEVER NATURE OR DESCRIPTION IN ANY SUCH PROCEEDINGS. THIS SHALL NOT, HOWEVER, BE CONSTRUED AS A WAIVER OF TENANT'S RIGHT TO ASSERT SUCH CLAIMS IN ANY SEPARATE ACTION OR ACTIONS BROUGHT BY TENANT.

48.    Counterpart Execution.

This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which counterparts together shall constitute one and the same instrument.

49.    Merger.

This Agreement contains the entire agreement between the parties with respect to the subject matter of the Agreement and supersedes all prior agreements and understandings, both oral and written, between the parties with respect to the subject matter of the Agreement.

50.    Severability.

If any one or more of the provisions or parts of a provision contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect in any jurisdiction, such determination of invalidity, illegality, or unenforceability shall not affect any other provision or part of a provision, but this Agreement shall be reformed and construed as if such invalid, illegal or unenforceable provision or part of a provision had never been contained herein and such provision or part shall be reformed so that it would be valid, legal and enforceable to the maximum extent permitted in such jurisdiction.

*(Remainder of Page is Blank. Signatures Contained on Following Page)*

IN WITNESS WHEREOF, the parties herein have hereunto set their hands on the date indicated below their signatures.

**Landlord:**

**VC MACON, GA, LLC**

By: _____
    J. Wilson La Foe, its *manager member*

Dated: 3/19/10

By: _____
    J. F. Davis, its *managi, member*

Dated: 3/5/10

**Tenant:**

**VIRGINIA COLLEGE, LLC**

By: _____
Its: _____CFO_____

Dated: 3/16/10

## EXHIBIT "A"

## TRACT 1

ALL THAT TRACT OR PARCEL OF LAND LYING IN LAND LOTS 156 & 157, 4TH LAND
DISTRICT, MACON, BIBB COUNTY, GEORGIA AND BEING MORE PARTICULARLY
DESCRIBED AS FOLLOWS:

TO FIND THE POINT OF BEGINNING, COMMENCE AT A 1/2" REBAR AND CAP SET
AT THE INTERSECTION OF THE SOUTHERLY RIGHT-OF-WAY LINE OF
EISENHOWER PARKWAY (U.S. 80 250' R/W) AND THE WESTERLY RIGHT-OF-WAY
LINE OF HERON ST (60' R/W) SAID POINT BEING THE POINT OF REFERENCE;
THENCE N85°17'26"W A DISTANCE OF 546.34" ALONG SAID RIGHT OF WAY OF
EISENHOWER PARKWAY TO A 1/2" REBAR FOUND; THENCE LEAVING SAID RIGHT-
OF-WAY S01°30.51"W A DISTANCE OF 55.08' TO A 1/2" REBAR AND CAP SET AND
THE POINT OF BEGINNING; THENCE FROM SAID POINT OF BEGINNING WITH A
CURVE TURNING TO THE RIGHT WITH AN ARC LENGTH OF 117.80', WITH A
RADIUS OF 181.00', WITH A CHORD BEARING OF S66°10'28"E, WITH A CHORD
LENGTH OF 115.73' TO A 1/2" REBAR AND CAP SET; THENCE S47°31'46"E A
DISTANCE OF 236.47' TO A 1/2" REBAR AND CAP SET; THENCE WITH A CURVE
TURNING TO THE LEFT WITH AN ARC LENGTH OF 172.37', WITH A RADIUS OF
240.00', WITH A CHORD BEARING OF S68°06'16"E, WITH A CHORD LENGTH OF
168.69' TO A 1/2" REBAR AND CAP SET; THENCE S88°40'44"E A DISTANCE OF 381.85'
TO A 1/2" REBAR AND CAP SET; THENCE N01°19'16"E A DISTANCE OF 55.00' TO A
1/2" REBAR AND CAP SET; THENCE S88°40'44"E A DISTANCE OF 153.98' TO A 1/2"
REBAR AND CAP SET; THENCE S01°09'32"W A DISTANCE OF 799.10' TO A POINT;
THENCE N88°56'13"W A DISTANCE OF 984.41' TO A 1/2" REBAR FOUND; THENCE
N01°30'51"E A DISTANCE OF 381.02' TO A 1/2" REBAR AND CAP SET; THENCE
N01°30'51"E A DISTANCE OF 626.70' TO A 1/2" REBAR AND CAP SET; SAID POINT
BEING THE POINT OF BEGINNING. SAID TRACT OF LAND CONTAINS 18.25 ACRES
MORE OR LESS AND BEING MORE PARTICULARLY DESCRIBED ON THAT CERTAIN
ALTA/ACSM SURVEY PREPARED FOR VC MACON,GA, LLC, A MISSISSIPPI LIMITED
LIABILITY COMPANY, BANKPLUS, A MISSISSIPPI BANK, AND FIRST AMERICAN
TITLE INSURANCE COMPANY, DATED APRIL 1, 2010 BY DAVID G. BENNETT,
GEORGIA REGISTERED LAND SURVEYOR NO. 3122 ON BEHALF OF DONALDSON,
GARRETT & ASSOCIATES, INC.

## EXHIBIT "B"
## COMMENCEMENT DATE ADDENDUM

THIS COMMENCEMENT DATE ADDENDUM (this "Addendum") is made and entered into on_____, 2010 and between VC Macon, GA, LLC, a Mississippi limited liability company, or its successors and assigns ("Landlord") and Virginia College, LLC, an Alabama limited liability company ("Tenant") pursuant to that certain Lease Agreement (the "Lease"), dated_____, 2010, between Landlord and Tenant.

Landlord and Tenant have executed the Lease, and the Lease contemplates that Landlord and Tenant will execute this Addendum upon the delivery of the Leased Premises to Tenant for Tenant's exclusive possession and that the term of the Lease shall commence on the Commencement Date (as defined in the Lease). Landlord and Tenant now desire to stipulate and agree (i) to the Delivery Date (as defined in the Lease), (ii) to the Commencement Date (as defined in the Lease) and (iii) to the termination date of the term of the Lease.

Now, therefore, Landlord and Tenant stipulate and agree as follows:

1.  The Delivery Date, as defined in the Lease, is_____, 20__.

2.  The Commencement Date, as defined in the Lease, is_____, 20__, and the term of the Lease shall terminate on_____, 20__, unless extended by Tenant by electing its option to renew and extend the Lease Term.

3.  Section 3 entitled "Minimum Rent and Additional Rent" subsection (a) is stricken and the following is submitted therefor: Tenant agrees to pay to the Landlord net minimum rent for the Leased Premises (the "Minimum Rent") in equal monthly installments in advance not later than the fifth (5th) day of each month of the Term; in the first full Lease Year and any prior partial Lease Year, Tenant shall deliver the monthly Minimum Rent installment of _____ (calculated upon an initial annual Minimum Rent equal to _____ ($_____) Dollars). Any partial months during the Term shall be prorated on a per diem basis.

4.  This Addendum may be executed in several counterparts, each of which shall be deemed an original and all of which counterparts together shall constitute one and the same instrument.

*(Remainder of Page is Blank. Signatures Contained on Following Page)*

IN WITNESS WHEREOF, Landlord and Tenant have executed this Addendum on the date first written above.

**LANDLORD:**

**VC MACON, GA, LLC**

By: _____      Dated:_____
       J. Wilson La Foe, _____

By: _____      Dated:_____
       J. F. Davis, _____

**TENANT:**

**VIRGINIA COLLEGE, LLC**

By: _____      Dated:_____
Its: _____

## EXHIBIT "C"

### SCHEDULE OF COVENANTS

1. That certain Declaration of Easements and Restrictive Covenants, dated March 18, 1998, executed by WHF, Inc., and recorded in Deed Book 4137, Page 172, of the Bibb County Clerk's Office; as amended by that certain First Amendment to Declaration of Easements and Restrictive Covenants, dated March 24, 1998, by WHF, Inc., and recorded in Deed Book 4140, Page 305 of the Bibb County Clerk's Office; as further amended by that certain Second Amendment to Declaration of Easements and Restrictive Covenants, dated October 26, 1999, by JDN Realty Corporation, and recorded in Deed Book 4594, Page 227, in the Bibb County Clerk's Office.

{00037482 6 }

## EXHIBIT "D"

### LEASE GUARANTY

In consideration of the execution and delivery of that certain Lease Agreement dated of even date herewith (hereinafter referred to as the "Lease") made by VC MACON, GA, LLC, a Mississippi limited liability company, as Landlord, and VIRGINIA COLLEGE, LLC as Tenant (being a wholly owned subsidiary of Guarantor) to induce Landlord to enter into the Lease (it being acknowledged and agreed that without Guarantor's guaranty, Landlord would not have entered into the Lease with Tenant), the undersigned EDUCATION CORPORATION OF AMERICA, a Delaware corporation (hereinafter referred to as "Guarantor"), having offices at 3660 Grandview Parkway, Suite 300, Birmingham, Alabama 35243, its successors and assigns, hereby guarantees to the Landlord, its successors and assigns, the payment of the rent reserved in the Lease and the performance by the Tenant of all the terms and provisions therein contained and any subsequent modifications thereto made with or without Guarantor's consent.

Provided due and proper notice or demand is given the Tenant, Guarantor hereby expressly waives notice of all defaults and agrees that the waiver of any rights by the Landlord against the Tenant, arising out of defaults by the Tenant or otherwise, shall not in any way modify or release the obligations of Guarantor.

This guaranty is and shall be construed as an absolute, continuing and unlimited guarantee of payment and performance commencing on the date hereof and throughout the entire term of the Lease and any other time Tenant has possession of the premises demised under the Lease, without regard to the regularity, validity or enforceability of any liability or obligation of the Tenant hereby guaranteed; and the Landlord shall not be required to proceed first against the Tenant or any other person or entity or against any collateral security held by Landlord before resorting to the undersigned for payment and performance.

The undersigned hereby waives:

    a. Notice of the acceptance of this Guaranty;

    b. Notice of any event of default under the Lease;

    c. Opportunity to cure any event of default;

    d. Proof of notice or demand to Tenant relating to any event of default to the extent notice is actually provided to Tenant.

The obligations of the undersigned under this Guaranty shall not be terminated, affected, or impaired in any manner by:

    a) Any changes, modifications, or amendments to the Lease;

{00037482 6 }

b)     Any extension or renewal of the term of the Lease, or expansion of the Leased Premises; or

Landlord's waiver of any terms, covenants, conditions, or agreements of the Lease, all of which may be done without notice to, or the consent of, the undersigned.

The obligations of the undersigned under this Guaranty shall not be terminated, affected, or impaired in any manner by reason of:

a)     The assertion by Landlord against Tenant of any of the rights or remedies available to Landlord under the Lease;

b)     The release or discharge of Tenant from any of Tenant's obligations under the Lease by operation of any bankruptcy, insolvency, or similar law or the actual or purported rejection of the Lease by a trustee in bankruptcy on behalf of Tenant;

c)     The failure of Landlord to exhaust or pursue any of its rights or remedies available against Tenant or any other guarantor;

d)     The granting by Landlord of any indulgences or extensions of time to Tenant;

e)     Any subletting of all or any part of the Leased Premises or any assignment or other transfer of the Lease;

f)     Landlord's release or discharge of any other guarantor; or

g)     Landlord's receipt, application, release, or impairment of any security or collateral given to secure the performance and observance of the terms and covenants of the Lease.

The undersigned subordinates any liability or indebtedness of Tenant now or hereafter held by the undersigned to the obligations of Tenant to the Landlord under the Lease.

If Landlord takes any action or participates in any proceeding to enforce the Lease or this Guaranty, or to protect Landlord's rights hereunder or thereunder after the occurrence of an event of default (including, but not limited to, bankruptcy, appellate, and post-judgment proceedings), the undersigned shall pay to Landlord all costs and expenses, including reasonable attorneys' fees, incurred or expended by Landlord in connection therewith.

The benefits of this Guaranty shall inure to the successors and assigns of Landlord and shall be binding upon the successors, assigns, and legal and personal representatives of the undersigned. For purposes of this Guaranty, the word "Tenant" shall also include the successors and assigns of Tenant. This paragraph shall not affect the restrictions relating to assignments and subletting by Tenant as set out in the Lease.

{00037482.6 }

This Guaranty shall be governed by and construed in accordance with the laws of the state in which the Leased Premises are located, without reference to any principles of conflict of laws. Venue for all actions or proceedings relating to or arising out of this Guaranty shall be in the County in which the Leased Premises are located.

This Guaranty may not be amended, modified, discharged, or terminated orally or in any manner other than by an agreement in writing signed by Landlord.

Guarantor hereby represents and warrants that all financial statements submitted by Guarantor to Landlord in connection with the Lease are true and correct in all respects, and fairly present the financial condition of Guarantor.

**GUARANTOR:**

**EDUCATION CORPORATION OF AMERICA**

Date: _3/16/10_

By: _____

Print Name: _ROGER MILLER_

Print Title: _CFO_

STATE OF _Alabama_ )
COUNTY OF _Jefferson_ )

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that _Roger Miller_, whose name as _CFO_ of Education Corporation of America, a Delaware corporation, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he/she, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal, this _16th_ day of _March_, 2010.

**AFFIX SEAL**

_Susan M. Bradley_
Notary Public

My commission expires: _6-20-2013_

{00037482 6 }

# EXHIBIT B

*cApex lease*

# LEASE AGREEMENT

THIS LEASE AGREEMENT (this "Agreement") is made and entered into on the latest date shown by the signatures of the parties hereto (the "Effective Date") by and between VC Macon, GA, LLC, a Mississippi limited liability company, or its successors and assigns ("Landlord") and Virginia College, LLC, an Alabama limited liability company ("Tenant").

1.  **Leased Premises.**

   (a)   In consideration of the rents, terms, provisions and covenants of this Agreement, Landlord hereby leases, lets and demises to Tenant and Tenant hereby takes, the following described Leased Premises (the "Premises" or "Leased Premises") comprised of certain land, buildings and related improvements located at 1901 Paul Walsh Drive in Macon, Bibb County, Georgia, including all appurtenances, licenses, easements, entitlements and permits related thereto. The Leased Premises are more particularly described in Exhibit "A." attached hereto and incorporated herein by reference. The Leased Premises contains 53,688 usable square feet of improved space in a portion of a building of approximately 102,098 usable square feet (the "Building") located on approximately 18.25 acres of land. The remaining 48,410 usable square feet of improved space in said Building is also being leased concurrently herewith by Tenant from Landlord and is referred to herein as the "School Premises".

   (b)   This Agreement is contingent upon Landlord's ownership and control of the Leased Premises. Landlord shall deliver to Tenant possession of the Leased Premises in accordance with the terms of this Section no later than April 5, 2010 (the "Delivery Deadline"), or as amended by Landlord and Tenant in writing. The date that Tenant obtains exclusive possession of the Leased Premise shall hereafter be referred to as the "Delivery Date." In the event Landlord fails to deliver possession of the Leased Premises by the Delivery Deadline, Tenant shall have the right to terminate this Agreement by notice to Landlord delivered within five (5) business days following the Delivery Deadline. In the event Tenant terminates that certain Lease Agreement, dated of even date herewith, relating to the School Premises (the "School Lease"), then Tenant may terminate this Agreement upon written notice to Landlord. If Landlord cannot deliver possession of the Leased Premises, Landlord shall not be deemed to be in default. Tenant agrees to accept possession of the Leased Premises at such time as Landlord is able to tender the same, unless Tenant exercises its termination rights set forth above.

   (c)   Tenant agrees to accept the Leased Premises in the "as-is, where is" condition.

{00037753 4 }

2. **Term.**

    (a)    The term of this Agreement (as such term may be extended pursuant to subsection 2(e) below, the "Term") shall be a period of fifteen (15) years commencing on the Commencement Date under the School Lease (the "Commencement Date").

    (b)    The term "Lease Year" as used herein shall mean each successive full calendar year of this Agreement, beginning with the calendar year 2011. The partial year from the Commencement Date until January 1, 2011 and the partial year from the end of the final full Lease Year to the Expiration Date (defined below) hereof shall be considered partial Lease Years.

    (c)    The Term shall end and this Agreement expire on the last day of the fifteenth (15th) full Lease Year, subject to Tenant's renewal option(s) as provided in subsection 2(e) below (the "Expiration Date").

    (d)    Within thirty (30) days of the Commencement Date, and without any further request Tenant and Landlord shall acknowledge the Delivery Date, the Commencement Date, and the Term by executing a document entitled the "Commencement Date Addendum" which form is attached as Exhibit "B". By executing the Commencement Date Addendum, Tenant is accepting possession of the Leased Premises and reconfirming the terms and conditions of this Agreement.

    (e)    Provided Tenant is not in default at the time Tenant delivers a renewal notice to Landlord after giving effect to applicable grace, notice and cure periods, Tenant shall have two (2) options to renew for a term of five (5) years for each option, upon all the terms, covenants, and conditions set forth in this Agreement. To elect such options, Tenant must give Landlord written notice to renew no less than six (6) months prior to the expiration of the then-current Term. After the exercise of a renewal option, all references to the Term of this Agreement shall be deemed to mean the Term, as extended pursuant to this Section.

3. **Minimum Rent and Additional Rent.**

    (a)    Tenant agrees to pay to the Landlord net minimum rent for the Leased Premises (the "Minimum Rent") in equal monthly installments in advance not later than the fifth (5th) day of each month of the Term; in the first full Lease Year and any prior partial Lease Year, Tenant shall deliver the monthly Minimum Rent installment of $22,370.00 (calculated upon an initial annual Minimum Rent equal to Two Hundred Sixty-Eight Thousand Four Hundred Forty and 00/100 Dollars ($268,440.00). Any partial months during the Term shall be prorated on a per diem basis.

(b) Beginning with the second (2nd) full Lease Year and for each successive Lease Year until the end of the Term, the annual Minimum Rent shall increase by one percent (1%) per annum over the previous year's Minimum Rent.

(c) Except for the Minimum Rent, any payment of funds or sums due Landlord that are required under this Agreement shall be defined as Additional Rent (the "Additional Rent").

(d) All Minimum Rent and Additional Rent payable under this Agreement is payable during the Term, commencing on the Commencement Date, and shall be paid and delivered to the Landlord at the place designated by the Landlord for notices under this Agreement, or such other place as it may subsequently designate in writing.

## 4. Late Charge.

Other remedies for nonpayment of rent notwithstanding, if the Minimum Rent or Additional Rent payment is not received by Landlord on or before five (5) days after the due date of the month for which rent is late, a charge of five percent (5%) of Tenant's delinquent rent payment shall be assessed to Tenant ("Late Fee"). Such Late Fee shall be immediately due and payable in addition to the Minimum Rent or Additional Rent, if any, owed by Tenant under the terms of this Agreement. The provision for such late charge shall be in addition to all of Landlord's other rights and remedies hereunder or at law shall not be construed as liquidated damages or as limiting Landlord's remedies in any manner. Landlord's receipt of a partial payment of Minimum Rent or Additional Rent shall not operate as a waiver or release of any outstanding sum due hereunder.

## 5. Usage.

(a) The Leased Premises may be used for any lawful purpose permitted under the instruments or laws described in Exhibit "D" attached hereto. Landlord will use its best effort to obtain the necessary consents of the adjoining shopping center tenants and owner(s), if required, for any permitted use of the Leased Premises. Tenant shall at its own cost and expense obtain the necessary licenses and permits necessary for any such use.

(b) On or before the Effective Date, Landlord shall provide Tenant with: (i) its most recent title insurance commitment covering the Leased Premises, (ii) a copy of Landlord's most recent survey of the Leased Premises, and (iii) the instruments and other documents described in Exhibit "C" attached hereto (collectively, the "Covenants"). All construction, improvements, modifications, occupancy, use and operations of the Leased Premises and the surrounding parking and access areas are subject to the Covenants.

(c) Tenant is not required to operate a business in the Leased Premises at any time.

6. **Signage.**

   (a)   Tenant shall have the right to the maximum building signage available under local law and specifically, to the maximum signage permitted by law and the Covenants or other restrictions that apply to the Leased Premises. Tenant shall at its expense also have the right to maximum signage on any and all pylon or monument signage now existing or that may become available or constructed by Tenant on the Leased Premises that is permitted by law and the Covenants at any time during the Term. To the extent allowed by law, Tenant shall have the right to operate its business and install signage under any of its authorized trade names including, but not limited to, Virginia College. Landlord makes no representation or warranty regarding the availability or permission to use any of Tenant's trade names within the State of Georgia.

   (b)   During the final six (6) months of the Term hereof or any extension or renewal thereof, Landlord shall have the right to post a "For Rent" sign and to show the Leased Premises at reasonable hours to prospective tenants.

7. **Alterations.**

   (a)   Tenant shall not make or allow to be made any structural alterations, additions, improvements and/or upgrades in or to the Leased Premises or alterations that impact the exterior of or systems serving the Leased Premises without first providing Landlord copies of the plans and specifications for those improvements and obtaining the written consent of Landlord to proceed with those improvements. Tenant may not alter or modify any Common Area (as defined in the Covenants) including, without limitation, all parking areas, absent Landlord's consent. Any alterations, additions, improvements and/or upgrades to the Leased Premises made by Landlord or Tenant (excluding satellite and/or wireless communications equipment installed by Tenant on, and removed without damage to, the roof and Tenant's trade fixtures, equipment or other personal property) shall at once become the property of Landlord and shall be surrendered to Landlord upon the termination of this Agreement.

   (b)   Absent Landlord's express prior consent Tenant shall have no authority, express or implied, to allow or permit any claim, lien or encumbrance of any kind or nature whatsoever upon, or in any manner to bind, the interest of Landlord in the Leased Premises or Tenant's leasehold interest arising hereunder or to charge or assign the rentals payable hereunder for any claim, debt or obligation in favor of any other party dealing with Tenant, including without limitation those who may furnish materials or perform labor for any construction or repairs. Tenant may not create any loan, indebtedness or obligation that is secured with its leasehold interest arising hereunder. Tenant covenants and agrees that it will immediately pay or cause to be paid all sums legally due and payable by it on account of any debt, obligation, promise, agreement, labor performed or materials furnished in connection with any work performed on the Leased Premises which may result in

a claim or lien asserted against its leasehold interest in the Leased Premises or the improvements thereon and that it hereby indemnifies, holds harmless and agrees to defend Landlord from any and all claims, debts, obligations, losses, costs or expenses, including without limitation attorney's fees, based on or arising out of threatened or asserted claims or liens against the leasehold estate or against the right, title and interest of the Landlord in the Leased Premises or otherwise in contravention of this Agreement.

(c)     If Tenant causes any construction or improvements to the Premises after the Commencement Date, Tenant shall immediately pay all contractors, subcontractors, suppliers, laborers and materialmen, so as to prevent the possibility of a lien attaching to the Leased Premises, and should any such claim or lien be threatened, made or filed, Tenant shall immediately contest same or bond against or discharge the same within thirty (30) days of written notice of such lien. Tenant shall immediately notify Landlord of all such claims or liens. Tenant shall diligently pursue any such contest, and upon failure to prevail in such contest, shall fully discharge such lien at its sole cost and expense immediately upon Landlord's request. Notwithstanding the foregoing, Tenant herein shall not have any authority to create any mechanics' or materialmen's liens on the Landlord's interest in the Leased Premises.

(d)     Notwithstanding any provision of this Agreement to the contrary, Tenant shall have the right to install a satellite dish or other transmission or reception device on the roof of the Leased Premises if necessary for its business operations provided that Tenant shall seek prior approval from Landlord which approval shall not be unreasonably withheld. In the event Tenant exercises its right to install such a satellite dish or device, Tenant shall ensure that said installation is in compliance with all applicable restrictions, codes, regulations, laws, ordinances and statutes. Tenant shall be solely responsible for obtaining all required permits and the maintenance of such equipment, and any repairs to the roof required by reason of said equipment and its installation or removal.

8.     Utilities, Covenant Costs, Taxes, Insurance and Additional Rent.

Beginning on the Commencement Date, Tenant shall be responsible for the following:

(a)     Tenant shall pay all expenses related to all utilities serving the Leased Premises including, but not limited to, water, sewer, gas and electricity metered to the Leased Premises, and for all charges for telephone service.

(b)     Additionally, if the Leased Premises is subject to the payment of any costs under the Covenants, including without limitation, Common Area (as defined in the Covenants) lighting, security and maintenance costs and the shared expense fee payable in connection with the road through the adjacent shopping center (the "Covenant Costs"), Tenant shall timely pay such Covenant Costs directly to the third party entitled to such payment. Landlord reserves the right to forward a

copy of any Covenant Costs invoice or statement directly to Tenant. In any event, Tenant shall pay such Covenant Costs on or before the due date thereof.

(c)    Tenant shall pay before delinquency all taxes, assessments, license fees, and other charges that are levied and assessed on Tenant's personal property, alterations, and trade fixtures.

(d)    Tenant shall pay Landlord all·taxes and government charges and assessments including without limitation all real estate ad valorem taxes, all personal property taxes, sales tax on rents, governmental and public charges and special assessments, if any, for each year imposed against the Leased Premises. If any governmental authority having jurisdiction now or hereafter imposes upon Landlord, pursuant to statute, ordinance, regulation, order or otherwise, a tax, levy, or other imposition based upon the rentals received by Landlord under the terms of this Agreement, Tenant shall, upon demand, pay to Landlord as Additional Rent the amount thereof at the time the rental payments fall due with respect to the term of this Agreement. The tax, levy, or imposition to which reference is made in this Section shall include sales, excise, ad valorem, personal property or similar taxes, but shall not include rollback, charge back or other assessment relating to any period prior to the Term of this Agreement or subsequent expiration of the Term of this Agreement, capital stock, estate, inheritance, income or franchise taxes imposed upon Landlord. Tenant shall pay Landlord, in advance, per month on the first (1st) day of each month as Additional Rent· one-twelfth (1/12th) of the current annual real estate ad valorem tax assessment, sales tax on rent, personal property taxes, governmental and public charges and special assessments or imposition. If the current assessments or impositions have not been fixed for the applicable year, then those of the preceding tax year shall be used as an estimate for the payments due on the first day of each month. All additional funds required for any difference between the estimated payments and the actual payments shall be paid to Landlord as Additional Rent within fifteen (15) days following Landlord's request and any excess shall be refunded within fifteen (15) days or credited against the subsequent month's(s") Minimum Rent. At its own cost and expense, Tenant may contest the amount or validity, in whole or in part, of any assessment or imposition or seek a reduction in the assessed valuation of the Leased Premises by appropriate proceedings diligently conducted in good faith. Tenant shall first consult with Landlord and obtain its consent before contesting any assessment or charge. Tenant shall promptly pay any contested assessment or imposition unless the proceeding prevents or stays its collection and Tenant deposits with Landlord the amount contested and unpaid, together with a sum to cover all charges that may be assessed against the Leased Premises in such proceeding. Upon final determination of any such proceeding, Tenant shall deliver to Landlord proof of the amount of such assessment or imposition as finally determined. Landlord shall not suffer or sustain any costs or expenses (including, but not limited to, attorneys' fees) or any liabilities in connection with such proceeding. Landlord

shall then pay such assessment or imposition, including interest, fees, penalties, and other liabilities awarded therein out of the sum so deposited with it by Tenant and refund any balance to Tenant. If sums deposited with Landlord are insufficient to pay the full amount of such assessment or imposition and other charges, Tenant shall immediately pay any deficiency. If during such proceeding Landlord in good faith deems the sums deposited with it insufficient, Tenant shall, upon demand, deposit with Landlord such additional sums that Landlord may reasonably request. Landlord, at Tenant's cost and expense, shall join in any such proceedings required by law. Furthermore, Landlord may contest the amount or validity, in whole or part, of any such assessment or imposition or seek a reduction in the assessed valuation of the Leased Premises; provided, however, any expenses of same shall be reimbursed to Landlord by Tenant only to the extent of actual savings realized by Tenant.

(e)     Landlord covenants not to make any changes, additions or alterations to the Leased Premises or surrounding common areas without first obtaining Tenant's written consent. Landlord shall not enter into any covenants, easements or other agreements that prohibit or restrict Tenant's proposed use of the Leased Premises or otherwise change the terms of this Agreement, including the costs incurred by Tenant hereunder, without Tenant's prior written consent, which may be withheld in Tenant's reasonable discretion. Notwithstanding, Landlord may make such alterations required or imposed by law, ordinance or the Covenants, or in the event of an emergency in order to protect Landlord's interest in the Leased Premises.

(f)     All charges and costs arising under this Section 8 shall be deemed Additional Rent. Tenant hereby agrees to indemnify, hold harmless and defend Landlord of and from any charges, liens, loss, damages, expenses, costs or claims including, without limitation, reasonable attorney's fees arising out of Tenant's obligations under this Section 8.

## 9.     Repairs and Maintenance.

Beginning on the Commencement Date, Tenant shall be responsible for the following:

(a)     Tenant shall, at its sole cost and expense keep the entire Leased Premises and the real estate upon which the Leased Premises are situated, including, but not limited to, the roof, exterior walls, windows, window glass, plate glass, doors, partitions, fixtures, equipment and appurtenances thereto (including lighting, heating and plumbing fixtures, and air conditioning systems), foundations, grounds, drives and parking area in good repair and condition, normal wear and tear and damages caused by casualty (except to the extent that Tenant is obligated to restore such damage in accordance with the terms of this Agreement) excepted, and Tenant shall immediately make all maintenance and/or repairs thereto which may be necessary. Moreover, Tenant shall, at its sole cost and expense, immediately repair or replace any damage or injury to all or any part of the Leased Premises.

{00037753 4 }                          - 7 -

Tenant shall immediately notify Landlord of any damages to the Leased Premises. Tenant shall be provided with all the benefits of all third party construction and equipment warranties, bonds and guaranties for this purpose. Tenant shall not be entitled to any abatement or reduction of Minimum or Additional Rent, by reason of any maintenance, repairs, alterations or additions made under the terms of this Agreement. Landlord shall repair all damage caused by the gross negligence or willful misconduct of Landlord or Landlord's agents, members, officers, employees, contractors, sublessees, invitees, or licensees.

(b)     Tenant shall not commit or allow any waste or damage to be committed on any portion of the Leased Premises, and at the termination of this Agreement, by lapse of time or otherwise, Tenant shall deliver the Leased Premises to Landlord in a condition at least as good as the condition the Leased Premises were in on the Commencement Date, normal wear and tear, damages caused by casualty (except to the extent that Tenant is obligated to restore such damage in accordance with the terms of this Agreement) and approved alterations excepted. Except as provided in Section 13, the cost and expense of any maintenance and/or repairs necessary to restore the condition of the Leased Premises as provided in this paragraph shall be borne by Tenant.

(c)     Maintenance and repairs required to be made by Tenant, if not otherwise undertaken by Tenant without notice from Landlord, shall be completed not more than thirty (30) days (and such reasonably longer period of time in the event repairs cannot be completed within said 30 day period for reasons beyond Tenant's control) from and after receipt by Tenant of written notice from Landlord of the necessity to make such maintenance or repairs. If Tenant refuses or neglects to maintain or repair as required hereunder to the reasonable satisfaction of Landlord, Landlord may but shall not be required to make such repairs without liability to Tenant for any loss, injury or damage that may accrue to Tenant's merchandise, equipment, inventory, fixtures or other property or to Tenant's business by reason thereof; and upon completion thereof, Tenant shall pay Landlord's cost for making such repairs, plus ten percent (10%) for overhead, immediately upon presentation of a bill therefor, as Additional Rent.

10.     **Casualty Insurance; Public Liability Insurance.**

Beginning on the Commencement Date, Tenant shall be responsible for the following:

(a)     Tenant will maintain and pay all insurance premiums for Special Form Property Insurance covering all structures and improvements on the Leased Premises, the School Premises and all personal property owned by Tenant, with coverage for perils as set forth on the Causes of Loss-Special Form or its equivalent, with a coverage extension for the perils of flood and earthquake, in an amount equal to full replacement cost of such structures and improvements, and in any no event, no less than the full replacement value or $7,500,000, whichever is greater, ("Property Insurance"). Such Property Insurance shall contain an agreed

valuation provision in lieu of any co-insurance clause, an increased cost of construction endorsement, changes in laws and ordinances endorsement, debris removal coverage, a waiver of subrogation endorsement in favor of Landlord and shall name the Landlord as loss payee.

(b)    Tenant agrees to carry at all times during the term of this Agreement, at its sole cost and expense, for the benefit of Landlord and Tenant, general public liability insurance against claims for bodily injury, death or property damage occurring upon, in or about the Leased Premises, with combined single limits of not less than Two Million and No/100 dollars ($2,000,000.00) per occurrence for bodily injury or property damage, and Five Million and No/100 dollars ($5,000,000.00) in the aggregate. Tenant shall cause Landlord to be designated as an additional insured on such general public liability insurance policy.

(c)    Tenant shall at all times during the term of this Agreement, at its sole cost and expense, maintain a policy or policies of business income insurance at a level sufficient to pay the Minimum Rent and Additional Rent herein provided. In the event the Leased Premises are destroyed, whether totally or partially, Tenant nevertheless shall remain bound by the terms and provisions of this Agreement unless this Agreement is terminated in accordance with the terms hereof.

(d)    Tenant shall not be allowed possession of the Leased Premises absent the insurance policies required by this Section 10. Each policy of insurance, or a certificate thereof, shall be promptly deposited with Landlord and shall provide for thirty (30) days advance written notice to the Landlord prior to cancellation or change. Each policy of insurance or certificate shall be accompanied by a waiver of subrogation endorsement in favor of Landlord. Each policy of insurance or certificate shall be accompanied by evidence of the payment of premiums therefor in a form reasonably satisfactory to Landlord. If Tenant fails to furnish Landlord with such policy or policies of insurance or such certificates prior to occupancy of the Leased Premises, or at any time thereafter, Landlord may cause such insurance to be issued and charged to the account of Tenant; provided that nothing herein shall be interpreted as requiring Landlord to secure such insurance. All insurance shall be with companies licensed to do business in the state where the Leased Premises is located, or to be located, and the form of the policies or certificates shall be subject to Landlord's approval, which approval shall not be unreasonably withheld.

11.    **Casualty and Restoration.**

Beginning on the Commencement Date, Tenant shall be responsible for the following:

(a)    If the Leased Premises should be damaged by fire, the elements, unavoidable accident or other casualty to the extent that the Leased Premises are rendered inaccessible for business purposes or totally or partially unusable by Tenant in the ordinary course of Tenant's business, Tenant shall immediately, but no later than

ten (10) of such casualty, provide notice to Landlord of such casualty. Within thirty (30) days following such casualty, Tenant shall notify Landlord of the amount of time Tenant estimates it will take to repair such damage ("Tenant's Estimate"). As long as Landlord and Landlord's mortgagee provide Tenant with adequate (as determined by Tenant in Tenant's reasonable discretion) assurances that insurance proceeds are available to Tenant, Tenant shall, to extent that such insurance proceeds are made available to Tenant, repair the same and this Agreement shall remain in full force and effect with no reduction of the Minimum Rent and Additional Rent.

(b)     Notwithstanding anything herein contained to the contrary, if the loss is expected to render the Leased Premises totally inaccessible or unusable by Tenant in the ordinary conduct of Tenant's business for more than six (6) months, then Tenant may terminate this Agreement by written notice to the Lender and shall assign any insurance claims relating to the improvements located on the Leased Premises to Landlord.

## 12.     Compliance with Laws, Rules and Regulations.

Tenant shall, at Tenant's sole cost and expense, comply with all of the requirements of all county, municipal, state, federal and other applicable governmental authorities, now in force, pertaining to Tenant's use and occupancy of the Leased Premises, and shall faithfully observe in the use of the Leased Premises all municipal and county ordinances and state and federal statutes now in force or which may hereafter be in force.

## 13.     Condemnation.

(a)     If the Leased Premises are taken under the power of eminent domain or sold under the threat of the exercise of such power to the extent that it substantially impairs Tenant's use of the Leased Premises (as determined by Tenant in its reasonable discretion) (the "Condemnation"), this Agreement shall be terminated on the date when the Leased Premises shall be so taken, and the rent shall be prorated as of that date. Such termination shall be without prejudice to the rights of either party to recover compensation from the condemning authority for any loss or damage caused by the Condemnation. Neither party shall have any rights in or to any award made to the other by the condemning authority. Each party expressly covenants and agrees not to assert a claim to any portion of an award in favor of the other. This covenant shall survive the termination of this Agreement.

(b)     If Tenant's use of the Leased Premises is not substantially impaired by Condemnation as determined above and only a portion of the Leased Premises is taken by such action then this Agreement shall terminate only as to the part so taken as of the date the condemning authority takes title or possession. This Agreement shall remain in full force and effect as to the portion of the remaining Leased Premises except that Minimum Rent shall be apportioned as of the date of vesting of title and Tenant shall be entitled to a pro rata reduction in the Minimum

Rent payable hereunder based on the portion that the value of the space taken bears to value of the Leased Premises immediately prior to such taking.

(c)     In either such event, the entire compensation award for the leasehold and reversion shall belong to Landlord without deduction for any present or future estate of Tenant, and Tenant hereby assigns to Landlord all of its right, title and interest to such award. Tenant shall execute all required documents to evidence such result. Tenant shall, however, be entitled to claim, prove and receive in the condemnation proceedings any award allowed for loss of business, goodwill, fixtures and or other equipment installed by it, but only if and to the extent such award is in addition to the award for the land, building and other improvements (or portions thereof), containing the Leased Premises. If this Agreement is not terminated, as herein provided, Landlord shall, to the extent of severance damages received by it in connection with such condemnation, promptly repair any damages to the Leased Premises caused by such condemnation, except to the extent that Tenant has been reimbursed therefor by the condemning authority. Tenant acknowledges that any portion of a condemnation award that is designated, awarded or paid for repairs shall belong to and immediately be delivered to Landlord. Tenant covenants to immediately notify Landlord if the Landlord's portion of the condemnation award is paid to Tenant and Tenant covenants to immediately pay to Landlord any such amount. If Landlord fails to provide adequate assurances to Tenant within ten (10) days of the conclusion of the condemnation proceeding that all amounts necessary to repair any damages to the Leased Premises caused by such condemnation are readily available to Landlord and will be promptly utilized for such repair, then Tenant may terminate this Agreement by thirty (30) days prior written notice to Landlord.

## 14.     Time is of the Essence.

Time is of the essence under this Agreement.

## 15.     Hold Harmless.

Landlord shall not be liable to Tenant or Tenant's owners, officers, managers, employees, agents, servants, licensees, visitors, guests and/or business invitees, or to any other person, for any injury to person or damage to property on or about the Leased Premises for any reason whatsoever, except for injury or damages caused by the gross negligence or willful misconduct of Landlord or its agents or contractors. Tenant agrees to indemnify, hold harmless and defend Landlord of and from any loss, expenses or claims including, without limitation, reasonable attorney's fees arising out of any such damage or injury arising as a result of Tenant's (or Tenant's owners, officers, managers, employees, agents, servants, licensees, visitors, guests and/or business invitees) acts at, or use or occupancy of, the Leased Premises.

16.  **Landlord's Lien Waiver.**

Within twenty (20) days after request therefore, Landlord agrees to execute a lien waiver on Tenant's lender's written form with respect to the personal property of Tenant located at the Leased Premises, including but not limited to Tenant's inventory, business equipment and proceeds therefrom, whether now owned or hereafter acquired, which lien waiver form shall subject to the reasonable comments of Landlord.

17.  **Landlord's Warranties and Covenants.**

Landlord represents and warrants to and covenants with Tenant that:

(a)   Subject to the Purchase & Sale Agreement between DDR Southeast Macon, L.L.C., a Delaware limited liability company, (the "Seller") and the Landlord, Landlord will acquire the Leased Premises in fee simple prior to the Construction Commencement Date (as defined in the School Lease). As of the date of this Agreement, there are no agreements, third party leases, restrictive covenants or exclusive or prohibited use provisions, other than the instruments or laws described in Exhibit "D" attached hereto, that in any way prohibit or restrict Tenant's proposed use of the Leased Premises for any lawful purpose;

(b)   Landlord will join Tenant in any enforcement of any third party obligation under the Covenants, at Tenant's cost and expense; and

(c)   Landlord has delivered or will deliver within twenty (20) days following the Effective Date, Landlord's Phase I Report (the "Phase I") addressed to Tenant.

18.  **Quiet Enjoyment.**

Landlord warrants that it has full right to execute and to perform this Agreement and to grant the estate leased, and, that Tenant, upon payment of the required rents and performing the terms, conditions, covenants and agreements contained in this Agreement, shall peaceably and quietly have, hold and enjoy the Leased Premises during the full term of this Agreement as well as any extension or renewal without let or hindrance by Landlord or its agents; provided, however, that Tenant accepts this Agreement subject and subordinate to the Covenants.

**19. Hazardous Materials.**

(a) Landlord makes no representation regarding Hazardous Materials affecting the Leased Premises. Landlord shall have performed a Phase I study and if required a Phase II study which shall be jointly certified to Landlord and Tenant.

(b) Neither Tenant, its successors or assigns, nor any permitted assignee, permitted sublessee or other person acting at the direction of Tenant shall: (a) manufacture, treat, use, store or dispose of any Hazardous Materials (as hereinafter defined) on the Leased Premises or any part thereof in violation of any applicable Environmental Laws; or (b) knowingly permit the release of a Hazardous Material from within the Leased Premises or any part thereof.

(c) In the event of a release of Hazardous Material by Tenant or any of Tenant's agents, members, officer, employees, contractors, invitees, licensees or sublessees, Tenant shall indemnify, protect, defend and hold Landlord harmless from and against any and all costs, fees, damages, losses, expenses and/or liabilities of any kind or nature in any way related to the release, removal, transportation and/or disposal of such Hazardous Materials, which obligation shall survive the expiration or earlier termination of this Agreement. If any action or proceeding be brought against Landlord by reason of such claim, Tenant upon notice from Landlord shall defend the same at Tenant's expense by counsel reasonably satisfactory to Landlord. In the event Landlord incurs any costs, fees, damages, losses, expenses, and/or liabilities in connection with a release of Hazardous Materials by Tenant or any of Tenant's agents, members, officer, employees, contractors, invitees, licensees or sublessees, Tenant shall pay such costs, fees, and/or expenses within ten (10) days of written request from Landlord. Landlord shall not incur any fees or costs before notifying Tenant that it is likely to incur such fees and costs unless Tenant takes corrective action.

(d) In the event of a release of Hazardous Material by Landlord or any of Landlord's agents, members, officer, employees, contractors, invitees, licensees or sublessees or if the presence of any Hazardous Material in or around the Leased Premises is identified in the Phase I, Landlord shall indemnify, protect, defend and hold Tenant harmless from and against any and all costs, fees, damages, losses, expenses and/or liabilities of any kind or nature in any way related to the release, removal, transportation and/or disposal of such Hazardous Materials, which obligation shall survive the expiration or earlier termination of this Agreement. If any action or proceeding be brought against Tenant by reason of such claim, Landlord upon notice from Tenant shall defend the same at Landlord's expense. In the event Tenant incurs any costs, fees, damages, losses, expenses, and/or liabilities in connection with a release of Hazardous Materials by Landlord or any of Landlord's agents, members, officer, employees, contractors, invitees, licensees or sublessees, Landlord shall pay such reasonable and direct costs, fees, and/or expenses within ten (10) days of written request from Tenant. Tenant shall not

incur any fees or costs before notifying Landlord that it is likely to incur such fees and costs unless Landlord takes corrective action.

(e)     Landlord and Tenant acknowledge and agree that Tenant is not assuming any liability or responsibility for Hazardous Materials located on the Leased Premises through no fault of Tenant or any of Tenant's agents, members, officer, employees, contractors, invitees, licensees or sublessees and that Tenant is not an "owner" or "operator" of the Leased Premises with respect to such conditions. If any Hazardous Materials are present on or under the Leased Premises through no fault of Tenant or any of Tenant's agents, members, officer, employees, contractors, invitees, licensees or sublessees, and such Hazardous Materials present a substantial threat to human health or safety and such condition remains unremedied for a period of six (6) months after written notice from Tenant to Landlord, then Tenant may terminate this Agreement upon written notice to Landlord.

(f)     The term "Hazardous Materials" shall mean any waste, substance or material that is: (i) identified in Section 101(14) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as the same may be amended from time to time (herein called "CERCLA"); or (ii) determined to be hazardous, toxic, a pollutant or contaminant, under federal, state or local law, including, but not limited to, petroleum and petroleum products. The term "release" shall have the meaning given to such term in Section 101(22) of CERCLA.

## 20.    Landlord's Right of Entry.

Without releasing Tenant from any of its obligations hereunder, Landlord shall have the right to enter the Leased Premises for the following: inspection; cleaning or making repairs if Tenant fails to comply with its obligations in that regard; alterations or additions as Landlord may deem necessary or desirable if Tenant fails to comply with its obligations in that regard; determining Tenant's use of the Leased Premises; or determining if an act of default under this Agreement has occurred. Landlord may also show the Leased Premises to prospective lenders, purchasers, or prospective tenants, all in a manner so as to interfere as little as reasonably possible with the business of Tenant.

## 21.    Assignment, Sale or Sublease.

Landlord shall have the unrestricted right to sell, transfer and assign, in whole or in part, or otherwise dispose of its rights and obligations in the Building and property that are the subject of this Agreement. Upon such sale, transfer or assignment, Landlord shall be released from the terms and conditions of this Agreement and Tenant shall look to such assignee or transferee to satisfy the landlord's obligations under this Agreement. Provided Tenant is not then in default under this Agreement after giving effect to applicable notice, grace and cure periods, Tenant shall have the unrestricted right to assign this Agreement or to sublet, in whole or in part, any portion of the Premises. Notwithstanding any such assignment or sublease, Tenant shall at all times remain liable for the payment of Minimum Rent and Additional Rent herein and for

compliance with all of its other obligations under this Agreement. Upon the occurrence of an "event of default" as defined herein, if all or any part of the Leased Premises are then assigned or sublet, Landlord, in addition to any other remedies provided by this Agreement or provided by law, may at its option, collect directly from the assignee or subtenant, and/or the Tenant, both of said parties being jointly and severally bound, all rents becoming due to Tenant by reason of the assignment or sublease. Any collection directly by Landlord from the assignee or subtenant shall not be construed to constitute a novation or a release of Tenant from the further performance of its obligations under this Agreement.

## 22. Holding Over.

In the event of holding over by Tenant after the expiration or termination of this Agreement, the hold over shall be as a tenant at will on a day to day basis and all of the terms and provisions of this Agreement, not otherwise in conflict with such status, shall be applicable during that period, except that Tenant shall pay Landlord as rental for the period of such hold over an amount equal to one hundred fifty percent (150%) times the rent which would have been payable by Tenant had the hold over period been a part of the original Term. Tenant agrees to vacate and deliver the Leased Premises to Landlord immediately upon expiration or termination of the Term in a condition at least as good as the condition of the Leased Premises were in on the Commencement Date, normal wear and tear, damages caused by casualty (except to the extent that Tenant is obligated to restore such damage in accordance with the terms of this Agreement) and approved alterations excepted. The rental payable during the hold over period shall be payable to Landlord on demand. No holding over by Tenant, whether with or without consent of Landlord, shall operate to extend this Agreement

## 23. Default by Tenant.

The following events shall be deemed to be an "event of default" by Tenant under the terms of this Agreement

(a) Tenant shall fail to pay any installment of the Minimum Rent, Additional Rent or any other monetary payment required under this Agreement to be paid to or on behalf of Landlord or any other person or entity hereby reserved when due, and such failure shall continue for a period of five (5) days or;

(b) Tenant or any Guarantor shall become insolvent, or shall make a transfer in fraud of creditors or;

(c) Tenant or any Guarantor shall file a petition under any section or chapter of the United States Bankruptcy Act, as amended, or under any similar law or statute of the United States or any State thereof; or Tenant shall be adjudged bankrupt or insolvent in proceedings filed against Tenant thereunder or;

(d) A receiver or trustee shall be appointed for all or substantially all of the assets of Tenant or any Guarantor;

(e)     Tenant shall desert or vacate any substantial portion of the Leased Premises or permit a lien (including, but not limited to, a construction lien or a material men's lien) to be filed or recorded against such Leased Premises, which lien shall not have been bonded or removed or canceled within the time herein specified or;

(f)     Tenant shall fail to cure any monetary default within ten (10) days after written notice thereof to Tenant, or fail to cure any non-monetary default within thirty (30) days after written notice thereof to Tenant; provided, however, that Landlord shall not be required to provide Tenant with more than two (2) default notices during any consecutive twelve (12) month period and provided further than during the final twelve (12) months of the Term, Landlord shall be required to provide Tenant with more than one (1) default notice.

## 24.     Remedies for Tenant's Default.

Upon the occurrence of any of the events of default set forth herein, and following any applicable notice, Landlord shall have the option to pursue any one or more of the following remedies:

(a)     Terminate this Agreement, in which event Tenant shall immediately surrender the Leased Premises to Landlord in a condition at least as good as the condition the Leased Premises were in on the Commencement Date, normal wear and tear, damages caused by casualty (except to the extent that Tenant is obligated to restore such damage in accordance with the terms of this Agreement) and approved alterations excepted, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which it may have for possession or arrearages in rent, enter upon and take possession of the Leased Premises and expel or remove Tenant and any other person who may be occupying such Leased Premises or any part thereof, by force if necessary, without being liable for prosecution of any claim of damages therefor. Landlord may sell or relet the Leased Premises and the amount Landlord receives (less any and all costs Landlord incurs in such disposition, including, but not limited to, reasonable overhead, employee and officer compensation, lease commissions and any costs of improvements to the Leased Premises) shall be considered a mitigation of the damages of Landlord hereunder;

(b)     Enter upon and take possession of the Leased Premises and expel or remove Tenant and any other person who may be occupying such Leased Premises or any part thereof, by force if necessary, without being liable for prosecution or any claim for damages therefor, and relet the Leased Premises and receive the rent therefor; and Tenant agrees to pay to the Landlord on demand any deficiency that may arise by reason of such reletting and all expenses of reletting as it accrues (the "Accrued Deficiencies"). The amount Landlord receives (less any and all costs Landlord incurs in such reletting, including, but not limited to, lease commissions and any cost of improvements to the Premises) shall be considered a mitigation of the damages of Landlord hereunder. In the event that Tenant shall

fail to pay to Landlord any portion of the Accrued Deficiencies within ten (10) days of Landlord's demand (provided, however, Landlord shall not be required to provide such demand more than two (2) occasions during any twelve (12) month period during the term of this Agreement), Landlord may elect to receive as damages the sum of (a) all amounts accrued through the date of the termination of Tenant's possessory rights, and (b) an amount equal to the total Minimum Rent that Tenant would have been required to pay for the remainder of the then-current term of this Agreement (excluding unexercised renewal options) discounted to present value at the Treasury yield closest approximating the time remaining in the balance of the term of this Agreement, minus the then present fair rental value of the Leased Premises for the remainder of such term, similarly discounted, after deducting all anticipated costs of reletting. Upon payment of such damages, this Agreement shall terminate;

(c)     Enter upon the Leased Premises without being liable for prosecution or any claim for damages thereof, and do whatever Tenant is obligated to do under the terms of this Agreement; and Tenant agrees to reimburse Landlord on demand for any expenses which Landlord may incur in thus effecting compliance with Tenant's obligations under this Agreement, and Tenant further agrees that Landlord shall not be liable for any damages resulting to the Tenant from such action, whether caused by the negligence of Landlord or otherwise; and/or;

(d)     Immediately secure the Leased Premises to protect the Landlord's interests. It is expressly understood that this action shall not terminate this Agreement and Tenant shall have the right to possession of the Leased Premises once the event(s) of default are cured to the satisfaction of Landlord. Tenant further agrees that Landlord shall not be liable for any damages to Tenant resulting from Landlord's action.

(e)     Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided by law, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any rent due to Landlord hereunder or of any damages accruing to Landlord by reason of the violation of any of the terms, provisions and covenants herein contained. No waiver by Landlord of any violation or breach of any of the terms, provisions and covenants herein contained shall be deemed or construed to constitute a waiver of any other violation or breach of any of the terms, provisions and covenants herein contained. Landlord's acceptance of the payment of rental or other payments hereunder after the occurrence of an event of default shall not be construed as a waiver of such default, unless Landlord so notifies Tenant in writing. Forbearance by Landlord to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default. If, on account of any breach or default by Tenant in Tenant's obligations under the terms and conditions of this Agreement, it shall become necessary or appropriate for Landlord to employ or consult with an attorney

concerning or to enforce or defend any of Landlord's rights or remedies hereunder, Tenant agrees to pay reasonable attorneys' fees. No act or thing done by the Landlord or its agents during the term hereby granted shall be deemed an acceptance of the surrender of the Leased Premises, and no agreement to accept a surrender of said Leased Premises shall be valid unless in writing signed by Landlord. The receipt by Landlord of rent with knowledge of the breach of any covenant or other provision contained in this Agreement shall not be deemed or construed to constitute a waiver of any other violation or breach of any of the terms, provisions and covenants contained herein.

(f)     Notwithstanding anything herein to the contrary, Landlord shall have a duty to mitigate its damages.

## 25.    Landlord's Default.

If Landlord should fail to perform as required under this Agreement, Tenant shall give Landlord written notice of the alleged default and Landlord shall have thirty (30) days to cure the default; provided, if a cure of a non-monetary default cannot be completed with said 30-day period Landlord shall not be deemed in default so long as Landlord promptly commences and diligently pursues such cure within said 30-day period. If the default does not inhibit Tenant from immediately operating its business and Landlord fails to cure the default within thirty (30) days, Landlord shall have the right to extend the cure period if Landlord is diligently attempting to cure the default. No default that does not substantially inhibit Tenant's right and ability to operate its business shall be grounds for the termination of this Agreement. Tenant shall have all remedies available at law and equity, together with those expressly provided herein, together with the right to cure such default and offset the cost of such cure against Minimum Rent. Upon Landlord's default in its obligation to pay (or credit) money, said amount shall bear interest beginning five (5) days after the date due at the rate per annum of twelve percent (12%).

## 26.    Force Majeure.

Whenever a period of time is herein prescribed for action to be taken by either party to this Agreement, the party charged with such obligation shall not be liable or responsible for, and there shall be excluded from the computation for any such period of time, any delays due to strikes, riots, acts of God, shortages of labor materials, war, terrorist acts, governmental laws, regulations, or restrictions, or any other causes of any kind whatsoever which are beyond the control of such party (collectively, "Force Majeure"). Force Majeure shall not serve to extend any payment obligations of Tenant hereunder.

## 27.    Interest on Amounts Owed.

In addition to the Late Fee, and not in lieu thereof, all amounts owed by Tenant under this Agreement not paid when due shall accrue interest at one and one-half percent (1½ %) per month, or the highest rate allowed by law, whichever is lower.

### 28. Attorney's Fees.

In the event either party hereto defaults in the performance of any of the terms, covenants, agreements or conditions contained in this Agreement, and the other party places the enforcement of all or any part of this Agreement, the collection of any rent due or to become due or recovery of the possession of the Leased Premises in the hands of an attorney, such defaulting party agrees to pay the other party's reasonable attorneys' fees for the services of such attorneys, whether suit is actually filed or not.

### 29. Estoppel Certificate.

Upon taking occupancy, and from time to time as requested by either party, the other party shall, upon ten (10) days' notice, issue its estoppel letter certifying any matters reasonably requested by the other party and that there are no known defaults by either party or, if there are defaults, specifying the defaults and the action necessary to cure. In the event Tenant has filed bankruptcy or other debtor protection proceeding and while such proceeding is pending, Tenant hereby appoints Landlord its attorney-in-fact during such period to execute and deliver an estoppel in favor of Landlord's lender, which appointment constitutes a power coupled with an interest, irrevocable during the term of this Agreement.

### 30. Offset Statement, Subordination and Attornment.

(a) Within ten (10) days after request therefor by Landlord, or in the event that upon any sale, assignment or hypothecation of the Leased Premises by Landlord an offset statement (a/k/a an estoppel certificate) shall be required from Tenant, Tenant agrees to and shall deliver in recordable form a certificate or estoppel to any proposed mortgagee or purchaser or to Landlord, certifying (if such be the case) that this Agreement is in full force and effect and that there are no defenses or offsets thereto, or stating those claimed by Tenant. In the event Tenant has filed bankruptcy or other debtor protection proceeding and while such proceeding is pending, Tenant hereby appoints Landlord its attorney-in-fact during such period to execute and deliver such statement in favor of Landlord's lender, which appointment constitutes a power coupled with an interest, irrevocable during the term of this Agreement.

(b) Within ten (10) days after request therefore by Landlord, Tenant agrees to and shall execute a reasonable subordination, non-disturbance and attornment agreement ("SNDA"), which shall contain a provision that, in the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under any mortgage made by Landlord covering the Leased Premises, Tenant shall attorn to the purchaser upon any such foreclosure or sale and recognize such purchaser as Landlord under this Agreement. The SNDA shall contain Landlord's lender's standard non-disturbance language and any other reasonable terms required by such lender or any purchaser of the Leased Premises or such purchaser's lender. Any SNDA shall be subject to Tenant's reasonable comments and shall acknowledge Tenant's rights under this Agreement (including

Tenant's offset rights herein) as long as Tenant is not in default. Until the execution of the SNDA, any such mortgage shall remain subordinate to this Agreement

## 31. Successors.

This Agreement shall be binding and inure to the benefit of Landlord and Tenant and their respective heirs, personal representatives, successors, subtenants and assigns. It is hereby covenanted and agreed that should Landlord's interest in the Leased Premises cease to exist for any reason during the terms of the Agreement, then (subject to the terms of the SNDA in the event of a foreclosure), this Agreement nevertheless shall remain unimpaired and in full force and effect and Tenant hereunder agrees to attorn to the then owner of the Leased Premises.

## 32. Notice.

(a)   All payments required to be made by Tenant to Landlord shall be payable to Landlord at the address set forth below, or at any other address within the United States as Landlord may specify from time to time by written notice. All payments of any kind, including without limitation Minimum Rent, Additional Rent, late charges and any other amounts, must be received by Landlord at such address on or before the time specified for payment of such amounts.

(b)   Any notice or document required or permitted to be delivered by this Agreement shall be deemed to be delivered when deposited in the United States Mail, postage prepaid, certified mail, return receipt requested, overnight courier, or when sent by facsimile, provided delivery is mechanically confirmed, addressed to the parties at the respective addresses set forth below and actually received at such addresses.

**Landlord:**

599 Highland Colony Parkway, Suite 120
Ridgeland, Mississippi 39157
ATTN: Messrs. J. Wilson La Foe & J. F. Davis
E-mail: jwlafoe@aol.com
E-mail: jffdavis.dl@comcast.net
FAX: (601) 605-0648

With copy to:

Jon A. Gottlieb, Esquire
FLYNN & GOTTLIEB, P.A.
800 Johnson Ferry Road, N.E.
Atlanta, Georgia 30342-1417
E-mail: jong@lawfg.com

**Tenant:**

Virginia College, LLC
3660 Grandview Parkway, Suite 300
Birmingham, Alabama 35243
Attn: General Counsel's Office-Roger Swartzwelder and Ben DeGweck
FAX: (205) 329-7857

With copy to:

Stephen W. Stallcup, Esq.
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203

33.    **Interpretation and Venue.**

This Agreement shall be construed under and governed by the laws of the state in which the Leased Premises are located. All headings preceding the text of the several provisions are inserted solely for convenience of reference and none of them shall constitute a part of this Agreement or affect its meaning, interpretation or effect. Venue for any action brought by Landlord and Tenant in relation to this Agreement shall be in the County and judicial district or division in which the Leased Premises are located.

34.    **Reports.**

Tenant covenants and agrees to turn over to Landlord upon request all plans, specifications, engineering drawings, surveys, information, inspections, tests, audits, studies, reports, title commitments and materials compiled or accumulated by Tenant in connection with the Leased Premises. This covenant shall survive the termination of this Agreement.

35.    **Lease Guaranty.**

Education Corporation of America, a Delaware corporation (the "Guarantor"), for value received and in consideration of and as an inducement to Landlord entering into this Agreement with Tenant, said inducement hereby acknowledged by Tenant, hereby absolutely and unconditionally guarantees the timely satisfaction by said Tenant of all payment and performance obligations under this Agreement as fully as if the Guarantor was directly liable as Tenant hereunder. On or before the Effective Date Guarantor shall execute Lease Guaranty attached hereto as Exhibit "E". This is a guaranty of payment and performance and not a guaranty of collection. Nothing herein shall require Landlord to pursue and exhaust its remedies and Tenant or the Leased Premises as a condition to exercising its remedies against Guarantor under this Section 35.

36.    **Waiver.**

The waiver by Landlord of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition. The subsequent acceptance of rent hereunder by Landlord shall not be deemed to be a waiver of any preceding breach by Tenant of any term, covenant or condition of this Agreement other than the failure by Tenant to pay the particular rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such rent. No covenant, term or conditions of this Agreement shall be deemed to have been waived by Landlord, unless such waiver shall be in writing by Landlord.

37.    **Accord and Satisfaction.**

No payment by Tenant or receipt by Landlord of a lesser amount than the rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent; nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent

be deemed to be an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy in this Agreement provided.

38. **Entire Agreement; Construction.**

    (a)    This Agreement and the exhibits and addenda, if any, attached hereto and forming a part hereof, set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Leased Premises, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than as are herein set forth. Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Agreement shall be binding upon Landlord or Tenant unless reduced to writing and signed by them.

    (b)    Each of the parties hereto materially participated in the drafting of this Agreement and, therefore, in the construction of any of the provisions hereof, such provisions shall not be construed more harshly against one or the other.

39. **No Partnership.**

Landlord does not, in any way or for any purpose, become a partner of Tenant in the conduct of its business, or otherwise, or a joint venturer or a member of a joint enterprise with Tenant. Provisions of this Agreement relating to the Additional Rent payable hereunder are included solely for the purpose of providing a method whereby the rent is to be measured and ascertained.

40. **Captions and Section Numbers.**

The captions and section numbers appearing in this Agreement are inserted only as a matter of convenience and in no way affect this Agreement.

41. **Broker's Commission.**

Each of the parties represents and warrants that there are no claims for brokerage commissions or finder's fees in connection with the execution of this Agreement and each of the parties agrees to indemnify the other against and hold it harmless from all liabilities arising from any such claim (including, without limitation the cost of counsel fees in connection therewith).

42. **Partial Invalidity.**

If any term, covenant or condition of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term, covenant or condition to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant or condition of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

## 43. No Option.

The submission of this Agreement for examination does not constitute a reservation of or option for the Leased Premises, and this Agreement becomes effective as a lease only upon execution and delivery thereof by Landlord and Tenant.

## 44. Recording.

    (a)    Tenant shall not record this Agreement without the written consent of Landlord; however, upon the request of either party hereto the other party shall join in the execution of a memorandum or so-called "short form" of this Agreement for the purpose of recordation. Said memorandum or short form of this Agreement shall describe the parties, the Leased Premises and the term of this Agreement and shall incorporate this Agreement by reference.

    (b)    Landlord shall have the right to record this Agreement and, at the request of Landlord, Tenant agrees to execute the necessary acknowledgments required to record this Agreement, in either short form or long form.

    (c)    The party requesting recordation shall be responsible for all costs thereof.

## 45. Financial Information.

Upon written request from Landlord to Tenant, not more often than once in every twelve (12) month period, Tenant will furnish Landlord with audited financial statements and current financial statements for Tenant and Guarantor not later than fourteen (14) days following such request. The failure to fully satisfy Landlord's request shall not bar another request for the balance of such statements prior to the expiration of said 12-month period. Such statements of financial condition shall include balance sheets, profit and loss statements and any related footnotes.

## 46. Waiver of Jury Trial and Counterclaims.

THE PARTIES HERETO SHALL, AND THEY HEREBY DO, WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HEREBY AGAINST THE OTHER ON ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE RELATIONSHIP WITH LANDLORD AND TENANT, TENANT'S USE OR OCCUPANCY OF THE LEASED PREMISES, AND/OR ANY CLAIM OF INJURY OR DAMAGE. IN THE EVENT LANDLORD COMMENCES ANY PROCEEDINGS FOR NON-PAYMENT OF MINIMUM RENT OR ADDITIONAL RENT, TENANT WILL NOT INTERPOSE ANY COUNTERCLAIM OF WHATEVER NATURE OR DESCRIPTION IN ANY SUCH PROCEEDINGS. THIS SHALL NOT, HOWEVER, BE CONSTRUED AS A WAIVER OF TENANT'S RIGHT TO ASSERT SUCH CLAIMS IN ANY SEPARATE ACTION OR ACTIONS BROUGHT BY TENANT.

47. **Counterpart Execution.**

This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which counterparts together shall constitute one and the same instrument.

48. **Merger.**

This Agreement contains the entire agreement between the parties with respect to the subject matter of the Agreement and supersedes all prior agreements and understandings, both oral and written, between the parties with respect to the subject matter of the Agreement.

49. **Severability.**

If any one or more of the provisions or parts of a provision contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect in any jurisdiction, such determination of invalidity, illegality, or unenforceability shall not affect any other provision or part of a provision, but this Agreement shall be reformed and construed as if such invalid, illegal or unenforceable provision or part of a provision had never been contained herein, and such provision or part shall be reformed so that it would be valid, legal and enforceable to the maximum extent permitted in such jurisdiction.

IN WITNESS WHEREOF, the parties herein have hereunto set their hands on the date indicated below their signatures.

**Landlord:**

VC MACON, GA, LLC

By: _____     Dated: 3/22/10
    J. Wilson La Foe, its *managing member*

By: _____     Dated: 3/24/10
    J. F. Davis, its _____

**Tenant :**

VIRGINIA COLLEGE, LLC

By: _____     Dated: 3/16/10
    Its: _____ CFO

## EXHIBIT "A"

### TRACT 1

ALL THAT TRACT OR PARCEL OF LAND LYING IN LAND LOTS 156 & 157, 4TH LAND DISTRICT, MACON, BIBB COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

TO FIND THE POINT OF BEGINNING, COMMENCE AT A 1/2" REBAR AND CAP SET AT THE INTERSECTION OF THE SOUTHERLY RIGHT-OF-WAY LINE OF EISENHOWER PARKWAY (U.S. 80 250' R/W) AND THE WESTERLY RIGHT-OF-WAY LINE OF HERON ST (60' R/W) SAID POINT BEING THE POINT OF REFERENCE; THENCE N85°17'26"W A DISTANCE OF 546.34" ALONG SAID RIGHT OF WAY OF EISENHOWER PARKWAY TO A 1/2" REBAR FOUND; THENCE LEAVING SAID RIGHT-OF-WAY S01°30.51"W A DISTANCE OF 55.08' TO A 1/2" REBAR AND CAP SET AND THE POINT OF BEGINNING; THENCE FROM SAID POINT OF BEGINNING WITH A CURVE TURNING TO THE RIGHT WITH AN ARC LENGTH OF 117.80', WITH A RADIUS OF 181.00', WITH A CHORD BEARING OF S66°10'28"E, WITH A CHORD LENGTH OF 115.73' TO A 1/2" REBAR AND CAP SET; THENCE S47°31'46"E A DISTANCE OF 236.47' TO A 1/2" REBAR AND CAP SET; THENCE WITH A CURVE TURNING TO THE LEFT WITH AN ARC LENGTH OF 172.37', WITH A RADIUS OF 240.00', WITH A CHORD BEARING OF S68°06'16"E, WITH A CHORD LENGTH OF 168.69' TO A 1/2" REBAR AND CAP SET; THENCE S88°40'44"E A DISTANCE OF 381.85' TO A 1/2" REBAR AND CAP SET; THENCE N01°19'16"E A DISTANCE OF 55.00' TO A 1/2" REBAR AND CAP SET; THENCE S88°40'44"E A DISTANCE OF 153.98' TO A 1/2" REBAR AND CAP SET; THENCE S01°09'32"W A DISTANCE OF 799.10' TO A POINT; THENCE N88°56'13"W A DISTANCE OF 984.41' TO A 1/2" REBAR FOUND; THENCE N01°30'51"E A DISTANCE OF 381.02' TO A 1/2" REBAR AND CAP SET; THENCE N01°30'51"E A DISTANCE OF 626.70' TO A 1/2" REBAR AND CAP SET; SAID POINT BEING THE POINT OF BEGINNING. SAID TRACT OF LAND CONTAINS 18.25 ACRES MORE OR LESS AND BEING MORE PARTICULARLY DESCRIBED ON THAT CERTAIN ALTA/ACSM SURVEY PREPARED FOR VC MACON,GA, LLC, A MISSISSIPPI LIMITED LIABILITY COMPANY, BANKPLUS, A MISSISSIPPI BANK, AND FIRST AMERICAN TITLE INSURANCE COMPANY, DATED APRIL 1, 2010 BY DAVID G. BENNETT, GEORGIA REGISTERED LAND SURVEYOR NO. 3122 ON BEHALF OF DONALDSON, GARRETT & ASSOCIATES, INC.

## EXHIBIT "B"

### COMMENCEMENT DATE ADDENDUM

THIS COMMENCEMENT DATE ADDENDUM (this "Addendum") is made and entered into on_____, 2010 and between VC Macon, GA, LLC, a Mississippi limited liability company, or its successors and assigns ("Landlord") and Virginia College, LLC, an Alabama limited liability company ("Tenant") pursuant to that certain Lease Agreement (the "Lease"), dated _____, 2010, between Landlord and Tenant.

Landlord and Tenant have executed the Lease, and the Lease contemplates that Landlord and Tenant will execute this Addendum upon the delivery of the Leased Premises to Tenant for Tenant's exclusive possession in as "as-is, where-is" basis and that the term of the Lease shall commence on the Commencement Date (as defined in the Lease). Landlord and Tenant now desire to stipulate and agree (i) to the Delivery Date (as defined in the Lease), (ii) to the Commencement Date (as defined in the Lease), (iii) to the termination date of the term of the Lease and (iv) that Tenant accepts the Leased Premises in its condition on the Delivery Date in an "as-is, where-is" basis, subject to and upon conditions of the Lease.

Now, therefore, Landlord and Tenant stipulate and agree as follows:

1. The Delivery Date, as defined in the Lease, is_____, 20__.

2. The Commencement Date, as defined in the Lease, is_____, 20__, and the term of the Lease shall terminate on_____, 20__, unless extended by Tenant by electing its option to renew and extend the Lease Term.

3. Tenant accepts the Leased Premises in its "as-is, where-is" on the Delivery Date, subject to and upon the conditions of the Lease.

4. This Addendum may be executed in several counterparts, each of which shall be deemed an original and all of which counterparts together shall constitute one and the same instrument.

   *(Remainder of Page is Blank. Signatures Contained on Following Page)*

{00037753 4 }

IN WITNESS WHEREOF, Landlord and Tenant have executed this Addendum on the date first written above.

**LANDLORD:**

**VC MACON, GA, LLC**

By: _____       Dated:_____
    J. Wilson La Foe, its _____·_____

By: _____       Dated:_____
    J. F. Davis, its _____

**TENANT :**

**VIRGINIA COLLEGE, LLC**

By: _____       Dated:_____
    · Its: _____

## EXHIBIT "C"

## SCHEDULE OF COVENANTS

That certain Declaration of Easements and Restrictive Covenants, dated March 18, 1998, executed by WHF, Inc., and recorded in Deed Book 4137, Page 172, of the Bibb County Clerk's Office; as amended by that certain First Amendment to Declaration of Easements and Restrictive Covenants, dated March 24, 1998, by WHF, Inc., and recorded in Deed Book 4140, Page 305 of the Bibb County Clerk's Office; as further amended by that certain Second Amendment to Declaration of Easements and Restrictive Covenants, dated October 26, 1999, by JDN Realty Corporation, and recorded in Deed Book 4594, Page 227, in the Bibb County Clerk's Office.

## EXHIBIT "D"

## APPLICABLE USE RESTRICTIONS

1. Covenants

2. School Lease

3. Applicable zoning ordinances.

## EXHIBIT "E"

## LEASE GUARANTY

In consideration of the execution and delivery of that certain Lease Agreement dated of even date herewith (hereinafter referred to as the "Lease") made by VC MACON, GA, LLC, a Mississippi limited liability company, as Landlord, and VIRGINIA COLLEGE, LLC as Tenant (being a wholly owned subsidiary of Guarantor) to induce Landlord to enter into the Lease (it being acknowledged and agreed that without Guarantor's guaranty, Landlord would not have entered into the Lease with Tenant), the undersigned EDUCATION CORPORATION OF AMERICA, a Delaware corporation (hereinafter referred to as "Guarantor"), having offices at 3660 Grandview Parkway, Suite 300, Birmingham, Alabama 35243, its successors and assigns, hereby guarantees to the Landlord, its successors and assigns, the payment of the rent reserved in the Lease and the performance by the Tenant of all the terms and provisions therein contained and any subsequent modifications thereto made with or without Guarantor's consent.

Provided due and proper notice or demand is given the Tenant, Guarantor hereby expressly waives notice of all defaults and agrees that the waiver of any rights by the Landlord against the Tenant, arising out of defaults by the Tenant or otherwise, shall not in any way modify or release the obligations of Guarantor.

This guaranty is and shall be construed as an absolute, continuing and unlimited guarantee of payment and performance commencing on the date hereof and throughout the entire term of the Lease and any other time Tenant has possession of the premises demised under the Lease, without regard to the regularity, validity or enforceability of any liability or obligation of the Tenant hereby guaranteed; and the Landlord shall not be required to proceed first against the Tenant or any other person or entity or against any collateral security held by Landlord before resorting to the undersigned for payment and performance.

The undersigned hereby waives:

    a. Notice of the acceptance of this Guaranty;

    b. Notice of any event of default under the Lease;

    c. Opportunity to cure any event of default;

    d. Proof of notice or demand to Tenant relating to any event of default to the extent notice is actually provided to Tenant.

The obligations of the undersigned under this Guaranty shall not be terminated, affected, or impaired in any manner by:

    a) Any changes, modifications, or amendments to the Lease;

    b) Any extension or renewal of the term of the Lease, or expansion of the Leased Premises; or

{00037753 4 }

Landlord's waiver of any terms, covenants, conditions, or agreements of the Lease, all of which may be done without notice to, or the consent of, the undersigned.

The obligations of the undersigned under this Guaranty shall not be terminated, affected, or impaired in any manner by reason of:

a) The assertion by Landlord against Tenant of any of the rights or remedies available to Landlord under the Lease;

b) The release or discharge of Tenant from any of Tenant's obligations under the Lease by operation of any bankruptcy, insolvency, or similar law or the actual or purported rejection of the Lease by a trustee in bankruptcy on behalf of Tenant;

c) The failure of Landlord to exhaust or pursue any of its rights or remedies available against Tenant or any other guarantor;

d) The granting by Landlord of any indulgences or extensions of time to Tenant;

e) Any subletting of all or any part of the Leased Premises or any assignment or other transfer of the Lease;

f) Landlord's release or discharge of any other guarantor; or

g) Landlord's receipt, application, release, or impairment of any security or collateral given to secure the performance and observance of the terms and covenants of the Lease.

The undersigned subordinates any liability or indebtedness of Tenant now or hereafter held by the undersigned to the obligations of Tenant to the Landlord under the Lease.

If Landlord takes any action or participates in any proceeding to enforce the Lease or this Guaranty, or to protect Landlord's rights hereunder or thereunder after the occurrence of an event of default (including, but not limited to, bankruptcy, appellate, and post-judgment proceedings), the undersigned shall pay to Landlord all costs and expenses, including reasonable attorneys' fees, incurred or expended by Landlord in connection therewith.

The benefits of this Guaranty shall inure to the successors and assigns of Landlord and shall be binding upon the successors, assigns, and legal and personal representatives of the undersigned. For purposes of this Guaranty, the word "Tenant" shall also include the successors and assigns of Tenant. This paragraph shall not affect the restrictions relating to assignments and subletting by Tenant as set out in the Lease.

This Guaranty shall be governed by and construed in accordance with the laws of the state in which the Leased Premises are located, without reference to any principles of conflict of laws. Venue for all actions or proceedings relating to or arising out of this Guaranty shall be in the County in which the Leased Premises are located.

5

This Guaranty may not be amended, modified, discharged, or terminated orally or in any manner other than by an agreement in writing signed by Landlord.

Guarantor hereby represents and warrants that all financial statements submitted by Guarantor to Landlord in connection with the Lease are true and correct in all respects, and fairly present the financial condition of Guarantor.

**GUARANTOR:**

**EDUCATION CORPORATION OF AMERICA**

Date: _3/16/10_

By: _____

Print Name: _ROGER MILLER_

Print Title: _CFO_

STATE OF _Alabama_ )
COUNTY OF _Jefferson_ )

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that _Roger Miller_, whose name as _CFO_ of Education Corporation of America, a Delaware corporation, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he/she, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal, this _16th_ day of _march_, 2010.

**AFFIX SEAL**

_Susan M. Bradley_
Notary Public

My commission expires: _6-20-2013_

# EXHIBIT C

## DL Investments, LLC

*599 Highland Colony Parkway, Suite 120*
*Ridgeland, MS 39157*
*(601) 605-0658    Fax (601) 605-0648*

August 13, 2018

Attn: General Counsel's Office
Roger Swartzwelder
Ben Degweck
Virginia College, LLC
3660 Grandview Parkway, Suite 300
Birmingham, AL 35243                         *Via fax (205-329-7857)*

RE:    Lease for  Virginia College  at 1901 Paul Walsh Drive Macon GA

Dear Mr. Swartzwelder,:

I am writing you pursuant to the terms and conditions of the lease agreement (the "Lease Agreement") by
and between VC Macon, GA, LLC (the "Lessor") and Virginia College, LLC (the "Lessee") for the
school at the above referenced location.

Lessor hereby notifies Lessee that payment for the rent due August 1, 2018 has not been received and a
late fee of $4,130.04 has been assessed the Lessee.  In addition last month's late fee plus interest has not
been paid. Total amount currently due is $90,922.82.

*This Lease Agreement is currently in default. If the above stated rents are not received within 10 days*
*of receipt of this notice then* the Lessor shall have the option to pursue any one or more of the remedies
available to Lessor without any further notice or demand whatsoever.  Concurrently, Lessor shall pursue
all available remedies against the Guarantors, both jointly and severally, for full and complete satisfaction
of the payments due under the Lease Agreement.

Sincerely yours,

J. Wilson La Foe

:cc:    Stephen W. Stallcup, Esq.
        Maynard Cooper & Gale, P.C.
        1901 Sixth Avenue North
        2400 Regions/Harbert Plaza
        Birmingham, AL  35203
        FAX:   205-254-1999

# EXHIBIT D

**From:** Rhine, Zvi [mailto:ZRhine@hilcoglobal.com]
**Sent:** Thursday, September 06, 2018 3:06 PM
**To:** Jeff Davis
**Subject:** RE: Education Corp of America

Jeff, as we discussed, Hilco Global has been hired as ECA's (the parent company of Virginia College, Brightwood, etc) restructuring advisors to achieve an out-of-court solution. Given the company's current liquidity, finding a capital provider is imperative to the Company's ability to continue as an ongoing concern. Our task is to terminate 25+ locations that will eliminate enough liability/operating losses to trigger two separate $15mm capital injections. To summarize the proposal, the potential capital provider/company wish to terminate the Macon and Baton Rouge leases according to the following terms:

1. Any back/unpaid rent thru August will be paid by the end of September (to coincide with an injection of capital into the company) – I understand this doesn't apply in this situation
2. No rent will be paid for September
3. Full rent for Oct-Jan '19 (4 payments in total)
4. A one-time lump sum payment of 5 months in Feb '19 for the Macon leases (to coincide with a secondary injection of capital into the company)
5. A one-time lump sum payment of 6 months in Feb '19 for the Baton Rouge lease (to coincide with a secondary injection of capital into the company)
6. The Macon leases will terminate effective May 31, 2019
7. The Baton Rouge lease will terminate effective June 30, 2019

These terms should allow the company to fulfill its teach out obligation and allow the students to finish the existing term as required by the Department of Education for continued Title IV funding. Thereafter, continuing students will be offered a transfer to an adjacent school or a refund. Our goal is to make significant progress over the next few weeks to achieve an out-of-court restructuring and trigger the needed capital injection. Let me know if you have any questions. I'm available to discuss further at your convenience.

Zvi Rhine

---

**From:** Rhine, Zvi
**Sent:** Wednesday, September 05, 2018 10:09 AM
**To:** 'jfdavis@dlinv.net'
**Subject:** Education Corp of America

Jeff, I represent Education Corp of America on the company's restructuring efforts. I've attached an authorization letter for your review. I've been trying to reach you but the phone number on file seems to be inaccurate. Please give me a call at your convenience so we can discuss your affiliated sites. My contact info is below. Thanks.

Zvi Rhine

# EXHIBIT 2

# STATE OF GEORGIA
## Secretary of State
### Corporations Division
### 313 West Tower
### 2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

**Annual Registration**

*Electronically Filed*
Secretary of State
Filing Date: 08/14/2018 11:02:58

| BUSINESS INFORMATION | |
| --- | --- |
| **BUSINESS NAME** | : VC MACON, GA, LLC |
| **CONTROL NUMBER** | : 10023544 |
| **BUSINESS TYPE** | : Foreign Limited Liability Company |
| **JURISDICTION** | : Mississippi |

| BUSINESS INFORMATION CURRENTLY ON FILE | |
| --- | --- |
| **PRINCIPAL OFFICE ADDRESS** | : 599 HIGHLAND COLONY PKWY. #120, Suite 120, Ridgeland, MS, 39157, USA |
| **REGISTERED AGENT NAME** | : Jon A. Gottlieb |
| **REGISTERED OFFICE ADDRESS** | : 800 Johnson Ferry Road, Atlanta, GA, 30342, USA |
| **REGISTERED OFFICE COUNTY** | : Fulton |

| UPDATES TO ABOVE BUSINESS INFORMATION | |
| --- | --- |
| **PRINCIPAL OFFICE ADDRESS** | : 599 HIGHLAND COLONY PKWY. #120, Suite 120, Ridgeland, MS, 39157, USA |
| **REGISTERED AGENT NAME** | : Jon A. Gottlieb |
| **REGISTERED OFFICE ADDRESS** | : 800 Johnson Ferry Road, Atlanta, GA, 30342, USA |
| **REGISTERED OFFICE COUNTY** | : Fulton |

| AUTHORIZER INFORMATION | |
| --- | --- |
| **AUTHORIZER SIGNATURE** | : J F DAVIS |
| **AUTHORIZER TITLE** | : Organizer |

# EXHIBIT 3

**F0108**          **2018049640**

**Fee:** $



Business ID: 960939
Filed: 02/13/2018 11:22 AM
C. Delbert Hosemann, Jr.
Secretary of State

**D E L B E R T   H O S E M A N N**
*Secretary of State*

**P.O. BOX 136**
**JACKSON, MS 39205-0136**

**TELEPHONE: (601) 359-1633**

## 2018  LLC Annual Report

### Business Information

*Business ID:*  960939      *Business Name:*  VC Macon, GA, LLC
*State of Incorporation:*  MS      *Business Email:*  jfdavis@dlinv.net
*Phone:* (***)***-****
*FEIN:* **-*******

*Principal Address:*  599 HIGHLAND COLONY PKWY, SUITE 120
RIDGELAND, MS 39157

### Registered Agent

*Name:*  DL Investments, LLC
*Address:*  599 Highland Colony Parkway, Suite 120
Ridgeland, MS 39157

### Managers and Members

### Managers

*Name:*                       *Address:*

J Wilson Lafoe           599 HIGHLAND COLONY PARKWAY,
*Manager*                 SUITE 120
RIDGELAND, MS 39157

### Members

*Name:*                       *Address:*

J Wilson Lafoe           599 HIGHLAND COLONY PKWY SUITE
*Member*                 120
RIDGELAND, MS 39157

## Officers

| Title/Name: | Address: | Director: |
|---|---|---|
| **President:** | | ☐ |
| **Vice President:** | | ☐ |
| **Secretary:** | | ☐ |
| **Treasurer:** | | ☐ |

☐  This LLC has a written Operating Agreement.

## NAICS Code/Nature of Business

531120 - Lessors of Nonresidential Buildings (except Miniwarehouses)

## Signature

By entering my name in the space provided, I certify that I am authorized to file this document on behalf of this entity, have examined the document and, to the best of my knowledge and belief, it is true, correct and complete as of this day *02/13/2018*.

| Name: | Address: |
|---|---|
| J WILSON LAFOE | 599 HIGHLAND COLONY PKWY, SUITE 120 |
| *Manager* | RIDGELAND, MS 39157 |

**Officers List**

| *Name:* | *Address:* |
| --- | --- |
| J Wilson Lafoe<br>*Manager* | 599 HIGHLAND COLONY PARKWAY,<br>SUITE 120<br>RIDGELAND, MS 39157 |
| J Wilson Lafoe<br>*Member* | 599 HIGHLAND COLONY PKWY SUITE<br>120<br>RIDGELAND, MS 39157 |

# EXHIBIT 4

**Voter Registration Record**

## Source Information

| | |
|---|---|
| **Information Current Through:** | 07/05/2016 |
| **Database Last Updated:** | 03/29/2017 |
| **Update Frequency:** | ANNUAL |
| **Current Date:** | 10/17/2018 |

## Name and Personal Information

**Name:**  JOHN WILSON LAFOE

**Address:**

RIDGELAND, MS 39157

**Mailing Address:**

RIDGELAND, MS 39157

## Voter History

**Primary 2012**
**Special1 2012**
**General 2012**
**Primary 2011**
**Other 2011**
**General 2011**
**General 2010**
**Last Date Voted:**



## Demographic Information

**Political Party:**

## Registration Information

**Voter Identification Number:**
**Registration Date:**


*Thomson Reuters Legal is not a consumer reporting agency and none of its services or the data contained therein constitute a 'consumer report' as such term is defined in the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. sec. 1681 et seq. The data provided to you may not be used as a factor in consumer debt collection decisioning, establishing a consumer's eligibility for credit, insurance, employment, government benefits, or housing, or for any other purpose authorized under the FCRA. By accessing one of our services, you agree not to use the service or data for any purpose authorized under the FCRA or in relation to taking an adverse action relating to a consumer application.*

**End of Document**                                                     © 2018 Thomson Reuters. No claim to original U.S. Government Works.

| Motor Vehicle Record |
| --- |

## Source Information

| | |
| --- | --- |
| Coverage Begin Date: | 01/01/2001 |
| Information Current Through: | 09/17/2018 |
| Database Last Updated: | 10/01/2018 |
| Update Frequency: | 2X MONTHLY |
| Current Date: | 10/17/2018 |
| Source: | STATE TAX COMMISSION, MOTOR VEHICLE LICENSING BUREAU |

## Vehicle Information



| | |
| --- | --- |
| VIN: | |
| Vehicle Type: | |
| Model Year: | |
| Make: | |
| Body Style: | |
| Model/Series: | |
| Primary Color: | |

## Registration Information



| | |
| --- | --- |
| License Plate Number: | |
| Issuing State: | |
| Plate Type: | |
| Previous Plate Number: | |
| Previous Plate State: | MS |
| Registration Renewal Date: | 06/07/2018 |
| Expiration Date: | 06/30/2019 |
| Registrant(s) Since: | 06/20/2017 |
| Name: | JOHN W. LAFOE |
| Interest: | REGISTRANT |
| Mailing Address: | |
| | RIDGELAND, MS 39157-9790 |
| County: | MADISON |
| Registration Renewal Date: | 06/07/2018 |
| Expiration Date: | 06/30/2019 |
| Registrant(s) Since: | 06/20/2017 |
| Name: | JOHN W. LAFOE |
| Interest: | LESSEE |
| Mailing Address: | |
| | RIDGELAND, MS 39157-9790 |
| County: | MADISON |

## Title Information



| | |
| --- | --- |
| Original Title Date: | 06/17/2017 |
| Title Number: | |
| Name: | |
| Interest: | |
| Title Transaction Date: | |
| Mailing Address: | |
| | RIDGELAND, MS 39157-9790 |
| County: | MADISON |
| Name: | |

**Interest:**
**Title Transaction Date:**
**Mailing Address:**

RIDGELAND, MS 39157-9790

**County:** MADISON

**Historical DMV Record 1**

**Registration Renewal Date:** 06/20/2017
**Expiration Date:** 06/30/2018
**License Plate Number:**
**Issuing State:**
**Plate Type:**
**Name:** JOHN W. LAFOE
**Interest:**
**Mailing Address:**

RIDGELAND, MS 39157-9790

**County:** MADISON
**Registration Renewal Date:** 06/20/2017
**Expiration Date:** 06/30/2018
**Name:** JOHN W. LAFOE
**Interest:** REGISTRANT
**Mailing Address:**

RIDGELAND, MS 39157-9790

**County:** MADISON
**Title Transfer Date:** 06/17/2017
**Name:** UNKNOWN LIENHOLDER
**Interest:** LIEN HOLDER
**Mailing Address:** UNKNOWN

*Thomson Reuters Legal is not a consumer reporting agency and none of its services or the data contained therein constitute a 'consumer report' as such term is defined in the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. sec. 1681 et seq. The data provided to you may not be used as a factor in consumer debt collection decisioning, establishing a consumer's eligibility for credit, insurance, employment, government benefits, or housing, or for any other purpose authorized under the FCRA. By accessing one of our services, you agree not to use the service or data for any purpose authorized under the FCRA or in relation to taking an adverse action relating to a consumer application.*

**End of Document**          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# DECLARTION OF
# ROGER L. SWARTZWELDER
# IN SUPPORT OF DEFENDANT'S
# NOTICE OF REMOVAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **VC MACON, GA, LLC,** | |
| **Plaintiff,** | |
| **v.** | **CASE NO. _____** |
| **VIRGINIA COLLEGE, LLC;** **EDUCATION CORPORATION OF** **AMERICA,** | |
| **Defendants.** | |

**DECLARATION OF ROGER L. SWARTZWELDER IN SUPPORT OF**
**DEFENDANTS' NOTICE OF REMOVAL**

I, Roger L. Swartzwelder, declare:

1.     My name is Roger L. Swartzwelder. I am over the age of majority, competent to testify, and have personal knowledge of the facts contained herein. The facts stated herein are true and correct, and if called and sworn as a witness, I could and would competently testify thereto under oath. I make this Declaration for any lawful use or purpose.

2.     I am currently the Executive Vice President, Chief Compliance Office and General Counsel at Education Corporation of America in Birmingham, Alabama.

3.     Education Corporation of America, a Delaware corporation with its principal place of business in Birmingham, Alabama.

4.     Virginia College, LLC is an Alabama limited liability company with its principal place of business in Birmingham, Alabama. Attached as **Exhibit 1** hereto is a true and correct copy of the Annual Registration filed with the Secretary of State of Georgia by Virginia College, LLC on January 12, 2018.  The sole member of Virginia College, LLC is Education Corporation

of America, a Delaware corporation with its principal place of business in Birmingham, Alabama.

I declare under penalty of perjury under the laws of the State of Georgia and the laws of the United States of America that the foregoing is true and correct.

Dated: October 18, 2018

By: _____
Roger L. Swartzwelder

# EXHIBIT 1

# STATE OF GEORGIA
## Secretary of State
### Corporations Division
### 313 West Tower
### 2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

**ANNUAL REGISTRATION**

*Electronically Filed*
Secretary of State
Filing Date: 1/12/2018 3:18:00 PM

| BUSINESS INFORMATION | |
| --- | --- |
| CONTROL NUMBER | 09026676 |
| BUSINESS NAME | VIRGINIA COLLEGE, LLC |
| BUSINESS TYPE | Foreign Limited Liability Company |
| EFFECTIVE DATE | 01/12/2018 |

| PRINCIPAL OFFICE ADDRESS | |
| --- | --- |
| ADDRESS | 3660 Grandview Drive, Attn: Licensing, Birmingham, AL, 35243, USA |

| REGISTERED AGENT'S NAME AND ADDRESS | |
| --- | --- |
| NAME | ADDRESS |
| National Registered Agents, Inc. | 289 S. Culver Street, Fulton, Lawrenceville, GA, 30046-4805, USA |

| AUTHORIZER INFORMATION | |
| --- | --- |
| AUTHORIZER SIGNATURE | Brandon S Fee |
| AUTHORIZER TITLE | Authorized Person |